[Civ. No. 12338. Fourth Dist., Div. Two. May 23, 1973.]

W. H. SACKETT, Plaintiff and Appellant, v.
JACK D. WYATT et al., Defendants and Respondents.

594

COUNSEL

R. R. Campagna for Plaintiff and Appellant.

Richman & Garrett and Lionel Richman for Defendants and Respondents.

OPINION

TAMURA, J.—Plaintiff appeals from a judgment of dismissal following an order sustaining a demurrer to his first amended complaint without leave to amend. Review of the court's ruling requires an analysis not only of the first amended complaint, but of the original as well. We, therefore, briefly summarize both pleadings.

The original complaint named as defendants Jack D. Wyatt, General Truck Drivers Union Local 467 and Joint Western Area Committee (Joint Committee). Plaintiff alleged two causes of action. In the first, he alleged he was engaged in business as a radial highway common carrier solely in intrastate commerce in California with his principal place of business in Riverside County; that Local 467 was a duly authorized and accredited labor union representing employees and union members in the trucking industry in Riverside County; that Wyatt and certain Doe defendants were members of the executive board of the local and officers and agents thereof; that the Joint Committee is a body comprised of labor and management representatives to hear and decide grievances; that under the terms of a collective bargaining agreement between plaintiff and Local 467 which was in force and effect, the parties agreed to submit all disputes arising thereunder to arbitration; that the Joint Committee rendered a decision against plaintiff with respect to certain union grievances and a dispute has arisen concerning the interpretation of that decision; that the Joint Committee decision was "incomplete, indefinite and incapable of compliance without further elaboration"; that plaintiff requested further clarification to no avail; and that the union has threatened "strike sanctions" unless plaintiff complies with the Joint Committee decision as interpreted by the union.

In the second cause of action, plaintiff alleged that Wyatt orally agreed with plaintiff that the grievances filed by the union would be withdrawn provided plaintiff agreed to withdraw pending disciplinary charges against certain of his employees who were union members; that plaintiff withdrew his charges but, contrary to the oral agreement, Wyatt "and other defendants" prosecuted the union grievances before the Joint Committee; that plaintiff relied upon the agreement and was therefore unprepared for the Joint Committee hearings and thereby suffered an adverse decision; that Wyatt "performed said acts, conduct or omissions with no valid or legitimate labor-management purpose in mind but solely to vex, harass and annoy plaintiff."

Plaintiff prayed for an injunction restraining defendants from striking or picketing, for an order compelling arbitration of the dispute over the interpretation of the Joint Committee decision, for an order staying enforcement of that decision, and for damages.

A year and three days after the filing of the original complaint but before any responsive pleadings were filed, plaintiff filed a first amended complaint for damages naming only Wyatt (and Does) as defendants. The amended complaint also alleged two causes of action:

The first, after repeating the allegations concerning the nature of plaintiff's business, the position of Wyatt with Local 467, and the execution of a collective bargaining agreement, alleges that plaintiff brought disciplinary charges against certain employees pursuant to the collective bargaining agreement; that the union through Wyatt filed employee grievances against plaintiff; that Wyatt orally agreed with plaintiff that if plaintiff would withdraw his charges against his employees Wyatt would dismiss the union grievances; that plaintiff performed but Wyatt failed to withdraw the union grievances and instead prosecuted them before the Joint Committee; that as a result of Wyatt's breach, plaintiff was damaged to the extent of the Joint Committee's award against plaintiff in the sum of $1,850.

As a second cause of action plaintiff alleged that at the time the oral agreement was entered into, Wyatt never intended to withdraw the union grievances and that his promise to do so was "false and fraudulent"; that Wyatt acted "with no valid or legitimate labor-management purpose in mind but solely to vex, harass and annoy plaintiff." The prayer was for general and special damages according to proof together with exemplary damages.

Defendant Wyatt demurred to the first amended complaint and each cause of action therein for failure to state a cause of action and on the further ground that the action was barred by Code of Civil Procedure section 340, subdivision 4, in that it was not "commenced within one (1) year." In support of the demurrer defendant requested the court to take judicial notice of a decision of the National Labor Relations Board certifying Local 467 as the bargaining representative for plaintiff's employees. The court sustained the demurrer as to both causes of action without leave to amend.[1]

I

As to the first cause of action on the amended complaint, plaintiff contends the court erred in basing its ruling on the theory that an agent could not be held liable for damages for breach of contract when acting for a disclosed principal. It is urged the amended complaint merely alleged Wyatt's affiliation with the union but did not allege he was acting within the course and scope of his agency. Plaintiff's contention is without merit.

---

[1]Pursuant to plaintiff's request under Code of Civil Procedure section 472d for a statement of the grounds of the ruling on demurrer, the court specified the following grounds: "As to the first cause of action, agent not liable when acting for disclosed principal and estopple [*sic*] by reason of arbitration. [¶] As to the second cause of action, statute of limitation."

■ In ruling upon the demurrer the trial court was not confined to the allegations of the first amended complaint; it was entitled to consider the verified allegations of the earlier complaint. (*Lesperance* v. *North American Aviation, Inc.*, 217 Cal.App.2d 336, 340-341, fn. 1 [31 Cal. Rptr. 873]; *Hinman* v. *Wagnon*, 172 Cal.App.2d 24, 28 [341 P.2d 749].) Allegations of fact made under oath may not ordinarily be dropped without adequate explanation merely for the purpose of avoiding their harmful effect in a subsequent pleading. (*Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358]; *Callahan* v. *City and County of San Francisco*, 249 Cal.App.2d 696, 699 [57 Cal. Rptr. 639]; Chadbourne, Grossman, Van Alstyne, Cal. Practice, § 1167, pp. 393-394.)

■ The gravamen of the first cause of action of the amended complaint is a claim for damages for breach of an oral agreement between plaintiff and Wyatt wherein the latter allegedly promised to withdraw union grievances in consideration of plaintiff's promise to withdraw disciplinary charges against certain of his employees. The original complaint contains factual allegations showing that Wyatt was an officer and agent of Local 467; that the parties had entered into a collective bargaining agreement regulating the terms and conditions of employment and specifying the union and its officers and agents as the negotiating representatives of member employees; and that contrary to the alleged oral agreement, Wyatt and the union prosecuted the employees' grievances to a favorable Joint Committee decision. In the amended complaint plaintiff attempts to state a cause of action against Wyatt individually without any reference to the union's participation in negotiating the alleged oral agreement or the prosecution of the employees' grievances before the Joint Committee in violation of the agreement. However, the allegations of the original complaint clearly reveal that Wyatt was acting as a union representative in agreeing to withdraw union grievances and in subsequently prosecuting them before the Joint Committee. Those factual allegations may not be avoided by omitting them in the amended complaint without explanation. Indeed, in his opening brief appellant concedes that Wyatt was "ostensibly acting in his official capacity" in entering into the oral agreement.

In the foregoing circumstances, the demurrer to the first cause of action was properly sustained on the basis of applicable state law. Under California law it is settled that a personal judgment for damages for breach of contract may not be obtained against a known agent of a disclosed principal. (*Automatic Poultry Feeder Co.* v. *Wedel*, 213 Cal.App.2d 509, 518 [28 Cal.Rptr. 795]; *Hayman* v. *Shoemake*, 203 Cal.App.2d 140, 159 [21 Cal.Rptr. 519]; *Oppenheimer* v. *General Cable Corp.*, 143 Cal.App.2d

293, 297 [300 P.2d 151]; see *Carranza* v. *Noroian,* 240 Cal.App.2d 481, 483 [49 Cal.Rptr. 629].)

Moreover, though not specified by the trial judge as a ground for its order sustaining the demurrer, a personal judgment against defendant for damages for breach of contract is precluded by section 301 of the Labor Management Relations Act (L.M.R.A.). (29 U.S.C.A. § 185.)[2] Subdivision (a) provides that suits for "violation of contracts" between an employer and a labor organization representing employees in an industry affecting commerce as defined in the act may be brought in any federal district court having jurisdiction of the parties.[3] Subdivision (b) provides: "Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents.[4] Any such labor organization may sue or be sued

---

[2]In reviewing the validity of the court's ruling on the general demurrer we are not confined to a consideration of the sufficiency of the reasons given. It is the validity of the ruling which is reviewable and not the court's statement of reasons for its action. (*Patton* v. *Board of Harbor Commissioners,* 13 Cal.App.3d 536, 544, fn. 7 [91 Cal.Rptr. 832]; *Apelian* v. *County of Los Angeles,* 266 Cal.App.2d 550, 554 [72 Cal.Rptr. 265]; *Weinstock* v. *Eissler,* 224 Cal.App.2d 212, 225 [36 Cal.Rptr. 537].)

[3]Section 301 of the L.M.R.A. provides:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

"(d) The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

"(e) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling."

[4]Although plaintiff alleged in both his initial and amended complaints that he is in business as a common carrier engaged solely in intrastate commerce, he does not

as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." The United States Supreme Court has viewed section 301 as an expression of congressional policy "that only the union was to be made to respond for union wrongs, and that . . . union members were not to be subject to levy." (*Atkinson* v. *Sinclair Refining Co.*, 370 U.S. 238, 247-248 [8 L.Ed.2d 462, 470, 82 S.Ct. 1318].)

In *Atkinson* v. *Sinclair Refining Co., supra,* union employees allegedly participated in a work stoppage in violation of a no strike provision of a collective bargaining agreement. The employer brought suit in federal district court for damages in a multiple count complaint against both the union (count I) and several individual employees who were alleged to have acted as officers and agents of the union (count II). The district court held that the complaint stated a valid cause of action against the union under section 301 but ordered dismissal of the cause of action against the individual union officers and agents. The Court of Appeals reversed the order dismissing count II.

In affirming the district court's disposition, the Supreme Court held that in view of the allegation that the individual defendants acted "as officers, committeemen and agents" of the union in inducing a breach of the collective bargaining contract, count II alleging a violation of the no strike clause by the individual defendants "necessarily" charged a violation of the no strike clause by the union itself. Since proof of the allegations of count II would inevitably prove a violation of the no strike clause by the union, count II (like count I) was held to be a suit based on the *union's* breach of the collective bargaining contract and therefore within the purview of section 301. The court stated: "When a union breach of contract

seriously contend that he is beyond the pale of the Labor Management Relations Act. Nor could he. It is settled that under the act intrastate activities may be regulated if those activities have such a close and substantial relation to interstate commerce that their control is essential or appropriate to protect that commerce from burdens and obstructions. (*Labor Board* v. *Jones & Laughlin*, 301 U.S. 1, 37 [81 L.Ed. 893, 911, 57 S.Ct. 615, 108 A.L.R. 1352]; *National Labor Relations Bd.* v. *Niles Fire Brick Co.*, 124 F.2d 366, 369.) Because judicial interpretation of its jurisdictional power has been so broad, the National Labor Relations Board has determined that it should concern itself only with activities having a close relationship to and a substantial bearing upon interstate commerce. (*N.L.R.B.* v. *Carteret Towing Company*, 307 F.2d 835, 838.) An administrative determination that plaintiff's business has such an effect upon interstate commerce is evidenced by the board's decision certifying Local 467 as the exclusive bargaining representative of plaintiff's employees.

is alleged, that the plaintiff seeks to hold the agents liable instead of the principal does not bring the action outside the scope of § 301." (*Atkinson* v. *Sinclair Refining Co., supra,* 370 U.S. 238, 247, fn. omitted [8 L.Ed.2d 462, 469].)

■ The principles enunciated in *Atkinson* govern the case at bench. Plaintiff's original complaint alleged facts showing that defendant Wyatt was acting as a union representative in entering into and then allegedly breaching the oral agreement. Plaintiff's cause of action against Wyatt individually for breach of contract necessarily charged union violation of the contract. That being the case, by virtue of section 301 Wyatt may not be held personally liable for breach of the alleged agreement.

Our conclusion is not altered by the fact that the contract allegedly breached in the present case was a grievance settlement agreement rather than a collective bargaining agreement as in *Atkinson.* The word "contracts" as used in section 301 was intended to encompass more than collective bargaining agreements. Section 301 has been held to apply to a suit arising out of a violation of a strike settlement agreement between an employer and a union not entitled to recognition as exclusive bargaining agent of the employees (*Retail Clerks* v. *Lion Dry Goods,* 369 U.S. 17, 25-27 [7 L.Ed.2d 503, 508-509, 82 S.Ct. 541]), a suit by an employee to vindicate his individual rights arising from a collective bargaining contract (*Smith* v. *Evening News Assn.,* 371 U.S. 195, 199-201 [9 L.Ed.2d 246, 250-252, 83 S.Ct. 267, 269-271]), and a suit by a union to enforce a grievance settlement agreement involving a single employee (*Amalgamated Meat Cutters, etc., Local 195* v. *M. Feder & Co.* (E.D.Pa.) 234 F.Supp. 564). In *Amalgamated Meat Cutters, supra,* the union instituted grievance proceedings under the collective bargaining agreement based upon the discharge of one employee. Prior to the commencement of the arbitration hearing, the parties agreed to settle the grievance; the employer agreeing to pay the employee a certain sum and the employee agreeing to resign. The employer allegedly reneged and the union sued to enforce the settlement agreement. The court rejected the contention that the action was not within the ambit of section 301, subdivision (a), because it was "uniquely personal" to the employee and only incidentally related to the collective bargaining agreement. It held that the case fell within the express language of section 301, subdivision (a), in that the settlement by the union and the employer "was a contract between them and in entering into it the union acted as the collective bargaining agent of the employees." (234 F.Supp. at p. 567.) Moreover, the court pointed out that settlement by methods agreed upon by the parties of grievances arising under collective bargaining agreements underlies the policy of the L.M.R.A.

We conclude the cause of action for breach of the alleged settlement agreement in the present case came within the purview of section 301.

## II

■ The second cause of action of the amended complaint attempts to allege a cause of action for damages for fraud. It alleges that Wyatt's promise to drop the union grievance if plaintiff would drop his disciplinary charges was made with no intention to perform and was false and fraudulent. As a result of the false promise, the complaint continues, plaintiff "changed his position as alleged" to his damage.

Accepting the truth of the allegations of the amended complaint, as we must on a demurrer, plaintiff did allege certain of the basic elements constituting actionable fraud under California law. "A false promise is actionable on the theory that a promise implies intention to perform, that *intention to perform or not to perform* is a state of mind, and that misrepresentation of such a state of mind is a misrepresentation of *fact*. The allegation of a *promise* (which implies a representation of intention to perform) is the equivalent of the ordinary allegation of a representation of fact." (Original italics.) (3 Witkin, Cal. Procedure (2d ed. 1971) § 581, p. 2219, and cases there cited.) Defendant urges, however, that by virtue of section 301 of the L.M.R.A. and the principles announced in *Atkinson* v. *Sinclair Refining Co., supra,* 370 U.S. 238, a union agent cannot be held liable under the state tort law for the alleged false promise made in connection with the grievance settlement agreement.[5]

While we do not find any case dealing precisely with the point raised, we have concluded that the proper disposition of plaintiff's second cause of action is, like the claim for breach of contract, controlled by section 301 of the L.M.R.A. and the principles enunciated in *Atkinson* v. *Sinclair Refining Co., supra,* 370 U.S. 238.

In *Atkinson,* the court traced the enactment of section 301, subdivision (b), exempting union agents and members from personal liability for judgments against the union to a deeply felt congressional reaction to the

---

[5] Defendant also cites *Navios Corporation* v. *National Maritime Union of America,* 236 F.Supp. 657, affirmed per curiam 359 F.2d 853, cert. den. 385 U.S. 900 [17 L.Ed.2d 132, 87 S.Ct. 205], for the proposition that a union agent cannot be held liable under state tort law for his acts as a union agent. *Navios* is not dispositive of the issue before us. The question in *Navios* was whether a union agent could be sued individually on a common law cause of action for engaging in a secondary boycott. The court held that there was "no jurisdiction on common law principles to award damages under state law" for the alleged cause of action, citing *Teamsters Union* v. *Morton,* 377 U.S. 252 [12 L.Ed.2d 280, 84 S.Ct. 1253]. *Morton* held that union liability for activities constituting a secondary boycott must be governed by the Labor Management Relations Act and that the federal statute preempted state law.

*Danbury-Hatters* case (*Loewe* v. *Lawlor,* 208 U.S. 274 [52 L.Ed. 488, 28 S.Ct. 301]; *Lawlor* v. *Loewe,* 235 U.S. 522 [59 L.Ed. 341, 35 S.Ct. 170]) and its aftermath (*Loewe* v. *Savings Bank of Danbury,* 236 F. 444). There, the employer brought an antitrust treble damage action against union members, including officers and agents, to recover losses suffered in a nationwide, union-directed boycott of his hats. No judgment was sought or entered against the union, but instead a sizeable money judgment was recovered against the individual defendants for participating in the boycott. As a result of the judgment, numerous union members suffered great financial hardship including loss of their homes.

Viewed in the context of the *Danbury-Hatters* case, the court in *Atkinson* held that section 301, subdivision (b), should not be read narrowly but should be given a construction consonant with the evident congressional policy that the union as an entity should be the sole source of recovery of an injury inflicted by it. That policy, declared the court, "cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract *or tort, or both,* in a separate count or in a separate action for damages for violation of a collective bargaining contract for which damages the union itself is liable." (370 U.S. at p. 249 [8 L.Ed.2d at p. 470], italics supplied.)

Plaintiff's cause of action for fraud against Wyatt is foreclosed by the principles declared by *Atkinson.* Defendant's allegedly fraudulent representation—made while acting as a union agent—was integrally related to the grievance proceedings authorized by the collective bargaining agreement between plaintiff and Local 467. Indeed, defendant's alleged false promise was a part of the grievance settlement agreement. If in these circumstances we were to hold that defendant could be held personally liable for his representations, we would be giving section 301, subdivision (b), the kind of "niggardly" reading decried in *Atkinson.* Unlike conduct marked by violence where states have been permitted to award damages under traditional tort law because the states' interest in the maintenance of domestic peace is not overridden by congressional policy (see *San Diego Unions* v. *Garmon,* 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773]; *United Workers* v. *Laburnum Corp.,* 347 U.S. 656 [98 L.Ed. 1025, 74 S.Ct. 833]; 48 Boston Univ.L.Rev. 83), the tort alleged here is of a nonviolent character and, in the words of *Garmon,* of more than a "peripheral concern" to the proper administration of the L.M.R.A.[6] It involves conduct that is

[6]Although in *Garmon* the issue was whether state jurisdiction must yield when the activity which a state purports to regulate is arguably a concerted activity or an unfair labor practice within the compass of sections 7 and 8 of the L.M.R.A. (29 U.S.C. §§ 157 and 158), the policy considerations weighed by the court are applicable to the

part and parcel of negotiations for amicable settlement of grievances involving the rights of individual employees—a major "focus" of collective bargaining agreements. (*Smith* v. *Evening News Assn., supra,* 371 U.S. 195, 200 [9 L.Ed.2d 246, 251].) To permit plaintiff to maintain his second cause of action would simply foster evasion of section 301, subdivision (b). The congressional policy that unions should be the sole source of recovery for violations of their contracts could be avoided by simply couching allegations of wrongdoing in terms of fraud rather than breach. To exclude plaintiff's fraud claim from the scope of section 301, subdivision (b), would, as stated in *Smith* v. *Evening News Assn., supra,* 371 U.S. 195, 200 [9 L.Ed.2d 246, 251] "stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law." Moreover, to permit such action to be maintained against a union agent individually would undermine the policy of the L.M.R.A. favoring early voluntary settlements of grievance disputes arising under collective bargaining agreements. (L.M.R.A., § 203 [29 U.S.C. § 173].) Settlement negotiations would be severely hampered if employee representatives had to be wary of possible future personal liability for making allegedly false promises. To be safe, union agents would insist on the exhaustion of formal grievance procedures rather than reach an early voluntary settlement agreement.

We conclude that the demurrer to both causes of action of the amended complaint against Wyatt was properly sustained. It does not appear that under applicable substantive law there is any reasonable probability that the defects in the amended complaint can be cured by further amendment. In these circumstances, there was no abuse of discretion in sustaining the general demurrer without further leave to amend. (*Vater* v. *County of Glenn,* 49 Cal.2d 815, 821 [323 P.2d 85].)

The judgment is affirmed.

Kerrigan, Acting P. J., and Gabbert, J., concurred.

---

case at bench. The court held that states should be precluded from acting where the activity sought to be regulated is more than a "peripheral concern" of the L.M.R.A.