[No. C051636. Third Dist. June 29, 2007.]

DEPARTMENT OF PERSONNEL ADMINISTRATION et al., Plaintiffs and Respondents, v.
CALIFORNIA CORRECTIONAL PEACE OFFICERS ASSOCIATION, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

1194

## Counsel

Carroll, Burdick & McDonough, Ronald Yank, Gregg McLean Adam, Tricia E. Weaver, Jennifer S. Stoughton; Benjamin C. Sybesma and Christine Albertine for Defendant and Appellant.

K. William Curtis, Warren C. Stracener, James C. Spurling and Wendi L. Ross for Plaintiffs and Respondents.

## Opinion

**SCOTLAND, P. J.**—In this appeal, the California Correctional Peace Officers Association (CCPOA) claims that the superior court erred in vacating an arbitrator's award on the ground that the arbitrator exceeded her powers in making the award. (Code Civ. Proc., § 1286.2, subd. (a)(4).)

 An arbitrator exceeds his or her powers if the arbitration award violates a statutory right or otherwise violates a well-defined public policy. (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 [123 Cal.Rptr.2d 122].) That occurred here, as we will explain in the published part of this opinion, when the arbitrator determined that a written collective bargaining memorandum of understanding (MOU) between CCPOA and the Department of Personnel Administration (DPA) did not comport with the parties' actual agreement.

The arbitrator reformed the MOU after it had been ratified and approved by the Legislature pursuant to the Ralph C. Dills Act (Dills Act). (Gov. Code, § 3524 [formerly known as the State Employer-Employee Relations Act (Gov. Code, § 3512 et seq.)].) In changing the terms of the MOU after it was approved by the Legislature, the arbitrator exceeded her powers by violating the Dills Act and the important public policy of legislative oversight of state employee contracts.

Accordingly, we shall affirm the superior court's order granting DPA's petition to vacate the arbitration award.

In the unpublished part of our opinion, we address CCPOA's other arguments, which are of no benefit to CCPOA in light of our conclusion that the award exceeded the arbitrator's power.

## FACTS

This appeal arises from a dispute concerning the terms of an MOU negotiated in 2001 between DPA and CCPOA, which is the exclusive representative for employees in bargaining unit 6. The dispute centers on section 10.13 of the MOU concerning the release time bank (RTB), which permits employees to contribute hours of paid leave for the use of other employees "to conduct bona fide [CCPOA] business."

The "Ground Rules" governing the contract negotiations provided in pertinent part: "6. All proposals by both parties shall be made by the respective chief negotiators only at the Master Bargaining Table and shall be reduced to writing before any tentative agreements are reached. When a proposal is passed to modify or change the existing Bargaining Unit 6 [MOU] language, the parties agree to indicate new language by underlining additions to the MOU. When a proposal is passed to delete language from the existing MOU, the parties agree to indicate language proposed to be deleted by placing strikeouts through the existing MOU language. . . . [¶] 7. Oral or written understandings reached outside the Master Bargaining table shall not bind either side nor shall such understandings constitute 'bargaining history' for any proposal."

On September 12, 2001, CCPOA passed a proposal regarding section 10.13(A) of the MOU. As proposed by CCPOA, accepted by DPA, and memorialized in the MOU, section 10.13(A) states: "A CCPOA release time bank shall be established to which employees may contribute any earned leave credits, with the exception of sick leave. The contributions shall be in two (2) or more hour increments. Contributions in fractions of hours will not be allowed. Credit may not be transferred between departments. Contributions to the release time bank shall be computed once a month, provided they are received by the second Friday of that month."

Prior contracts entered into by CCPOA and DPA, and approved by the Legislature, included a 10,000-hour cap on accumulated leave in the RTB. CCPOA's proposal struck the following language from section 10.13(A): "An

employee may only make one (1) donation between July 1 and December 31, and one (1) donation between January 1 and June 30, during the contract year. A maximum of ten thousand (10,000) hours may be credited and used by CCPOA during the above contract year. The ten thousand (10,000) hours shall be divided in proportion to each department's (CDC/CYA/DMH) unit membership, i.e., fifty-eight hundred (5,800) hours, CDC; and forty-two hundred (4,200) hours, CYA."

Thus, the parties not only eliminated from section 10.13(A) the limitations on contributions to the RTB and the manner in which the 10,000-hour cap was split between departments, they eliminated the 10,000-hour cap altogether. However, CCPOA did not submit a written proposal to eliminate a similar cap in section 10.13(B), which sets forth the procedures for employees to contribute hours of leave to the RTB. Section 10.13(B) of the MOU states in relevant part: "In no case shall CCPOA accumulate or use more than ten thousand (10,000) CTO and/or vacation hours from the bank during the term of this MOU." The term of the MOU is from July 1, 2001, through July 2, 2006.

Pursuant to the Dills Act, the MOU was submitted to the Legislature for its approval. (Gov. Code, §§ 3517, 3517.5, 3517.61.) The enrolled bill report states the MOU will "[p]rovide [a] mutually agreed upon amount of employee release time annually for activity related to collective bargaining . . . ." (Dept. of Personnel Admin., Enrolled Bill Rep. on Sen. Bill No. 65 (2001–2002 Reg. Sess.) Jan. 14, 2002.) There is no mention of eliminating the 10,000-hour cap.

On May 20, 2005, DPA wrote a letter to CCPOA, stating a review of the RTB between 2002 and 2005 disclosed that the release time used by employees exceeded the limits set forth in section 10.13(B) of the MOU. DPA said: "Our review has shown that CCPOA has used a total of 122,387 hours (CDC and YA combined) since the enactment of the current MOU, or 112,387 hours more than the 10,000 hours authorized by Section 10.13. The amount of release time used exceeds the limits of the clear language contained in Section 10.13. [¶] Obviously, both parties (CCPOA and the State) have been remiss in monitoring the use of Section 10.13. Nevertheless, the 10,000 hour cap established in Section 10.13 has been greatly exceeded and there is now no authority to continue releasing CCPOA representatives under this section of the MOU. [¶] Therefore, any future request for both donations and release time pursuant to Section 10.13 must be denied, and any CCPOA representative currently on Section 10.13 release time must return to state employment no later than June 6, 2005."

Contending the 10,000-hour cap did not apply, CCPOA demanded immediate arbitration of the matter, pursuant to the arbitration provision of the MOU.

At the arbitration hearing, CCPOA asserted that the parties agreed to eliminate the 10,000-hour cap but, due to a scrivener's error, they modified only section 10.13(A) and neglected to modify section 10.13(B). CCPOA presented evidence that in 1997, during a period when there was no collective bargaining agreement in place, DPA permitted CCPOA to accumulate more than 10,000 release time hours in the RTB. CCPOA wanted to continue this practice and drafted a "side letter" to section 10.13, in which the parties agreed "to not enforce the caps of 10,000, 5,800 (CDC), and 4,200 (CYA) hours, and will continue to allow employees to make more than one contribution in either of the two six-month periods of time." DPA and CCPOA signed the side letter on September 19, 1997. According to CCPOA, the parties intended to incorporate the side letter agreement into the MOU by amending the terms of the MOU to eliminate the 10,000-hour cap.

DPA responded that the side letter agreement no longer was relevant in light of the parties' subsequent contrary agreement in the MOU. They agreed only to eliminate the departmental limits between the release time available for CDC (Department of Corrections) and CYA (Youth Authority), which limits existed in prior agreements, but did not address the 10,000-hour cap in section 10.13(B). According to DPA, it might have been remiss in enforcing the cap in the past but that did not preclude it from insisting on compliance with the contract language, which unambiguously establishes a cap.

CCPOA's chief negotiator, Steve Weiss, testified that it was the union's intent to remove the cap and, in attempting to do so, he shared the 1997 side letter agreement with the negotiators. CCPOA passed the proposal with the language about a cap stricken out of section 10.13(A), and after a brief discussion off the record, the parties signed the tentative agreement. According to Weiss, he did not realize that the language about a cap appeared in the contract twice, and he erred in failing to remove it from section 10.13(B).

Linda Buzzini, the lead spokesperson for DPA, testified that the parties discussed removing the cap; she recalled agreeing to CCPOA's demand, and the proposal eliminating the cap from 10.13(A) reflected their agreement. Buzzini could not recall if these discussions, which are not reflected in the bargaining notes, occurred away from the bargaining table. She testified that she never received a proposal from CCPOA about section 10.13(B).

The arbitrator ruled that the weight of the evidence disclosed the parties mutually agreed, off the record but at the bargaining table, to remove the 10,000-hour cap. The arbitrator found that it was "highly unusual in a vigorously contested case like this to have the spokesperson for both union and management so clearly and consistently articulate the parties' mutual intent." Moreover, she concluded, elimination of the cap was consistent with the parties' practice and with the 1997 side letter agreement. The arbitrator found that the unequivocal testimony of the chief negotiators for CCPOA and DPA established that the failure to remove the cap from section 10.13(B) of the MOU was an error that did not reflect the parties' intent. Rather, the parties' agreement was incorrectly reduced to writing as the result of mutual mistake or inadvertence.

Accordingly, the arbitrator ruled that the 10,000-hour cap was not part of the MOU and ordered the parties to return to the status quo existing before DPA issued its letter to CCPOA stating it was bound by the cap in the MOU. She ordered DPA to reimburse CCPOA for any out-of-pocket expenses associated with the curtailed use of the RTB following the issuance of the letter on May 20, 2005.

DPA then filed a petition in the superior court to vacate the arbitration award on the ground that the arbitrator exceeded her authority by altering the terms of the MOU based on parol evidence from an "off the record" discussion between the negotiators. DPA also argued the arbitrator's decision violated public policy in that the decision enforced a version of the MOU that was never submitted to the Legislature, as required by the Dills Act.

CCPOA responded that the arbitrator had authority to enforce the agreement actually reached by the parties, which agreement was inadvertently memorialized incorrectly in the written MOU.

The superior court ruled that the MOU stated it set forth the parties' entire agreement, and that the MOU expressly precluded the arbitrator from adding to, deleting, or altering any of the MOU's provisions. Thus, in using parol evidence to reform the integrated MOU, the arbitrator exceeded the power granted to her by the parties' arbitration agreement.

CCPOA asked the superior court to correct the arbitration award to restore the parties to the status represented by the 1997 side letter. The court declined, explaining: "[O]nce the parties reach an agreement on the MOU it must be approved by the legislature and the governor. For the Court to 'correct' the award as requested by [CCPOA] after the Legislature and the Governor have already approved it, would be to allow the Court to be

impermissibly interjected into the process, and abrogate the rights and powers of the legislature and governor to approve the MOU . . . ."

Accordingly, the superior court granted DPA's petition to vacate the arbitration award.

## DISCUSSION

### I

The scope of judicial review of arbitration awards is extremely narrow. Courts may not review the merits of the controversy, the sufficiency of the evidence supporting the award, or the validity of the arbitrator's reasoning. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899] (hereafter *Moncharsh*); *Jordan v. Department of Motor Vehicles, supra*, 100 Cal.App.4th at p. 443 (hereafter *Jordan*).) Indeed, with limited exceptions, "an arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh, supra*, 3 Cal.4th at p. 6; see *id.* at p. 11; *Jordan, supra*, 100 Cal.App.4th at p. 443.)

However, courts may, indeed must, vacate an arbitrator's award when it violates a party's statutory rights or otherwise violates a well-defined public policy. (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 272, 276–277 [52 Cal.Rptr.2d 115, 914 P.2d 193]; *Jordan, supra*, 100 Cal.App.4th at p. 443; *City of Palo Alto v. Service Employees Internat. Union* (1999) 77 Cal.App.4th 327, 330, 338–340 [91 Cal.Rptr.2d 500].)

Here, the arbitrator reformed the terms of the written MOU based on a mutual mistake by the parties when they set forth their agreement in a written MOU. However, when the arbitrator reformed the MOU, its terms already had been approved by the Legislature pursuant to the Dills Act. (Gov. Code, §§ 3517, 3517.5, 3517.61.)

DPA contends, as it did in the superior court, that reforming the written MOU, after it was approved by the Legislature, violated the Dills Act, which requires legislative approval of collective bargaining agreements. (See also *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524 [117 Cal.Rptr.2d 220, 41 P.3d 46] [a written contract may not be reformed based on mutual mistake if doing so prejudices the rights of a third party to the contract].)

Although the Dills Act was not the primary basis for the superior court's decision vacating the arbitration award, the court recognized that altering the MOU after approval by the Legislature would undermine the act's purpose. As the appellant, CCPOA has the burden to establish prejudicial error. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105 [87 Cal.Rptr.2d 754].) This means that CCPOA must demonstrate that the superior court erred in vacating the arbitration award on any of the grounds raised by DPA in its motion to vacate. It is a fundamental precept of appellate practice that we review the superior court's ruling, not its rationale. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143 [97 Cal.Rptr.2d 707] [summary judgment]; *Sackett v. Wyatt* (1973) 32 Cal.App.3d 592, 598, fn. 2 [108 Cal.Rptr. 219] [demurrer].)

Despite these rules of appellate procedure, CCPOA's briefing does not provide any reasoned response to DPA's contention concerning the Dills Act. Consequently, CCPOA has forfeited a claim that the arbitrator's award reforming the contract did not violate the Dills Act. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1245, fn. 14 [19 Cal.Rptr.3d 416]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273] [when an appellant fails to raise a point, or does not support a point with reasoned argument and citations to authority, it is forfeited].)

In any event, DPA's contention has merit.

■ Pursuant to the Dills Act, the Governor's representative and the exclusive employee representatives must meet and confer in good faith for the purpose of reaching agreement on wages, hours, and other terms and conditions of state employment. (Gov. Code, § 3517.) "If agreement is reached between the Governor and the recognized employee organization, they shall jointly prepare a written memorandum of such understanding which shall be presented, when appropriate, to the Legislature for determination." (Gov. Code, § 3517.5.) Government Code section 3517.61, which applies to state employees in state bargaining unit 6, states in pertinent part: "If any provision of the memorandum of understanding requires the expenditure of funds, those provisions of the memorandum of understanding may not become effective unless approved by the Legislature in the annual Budget Act," or, for purposes of the MOU at issue here, "in legislation other than the annual Budget Act." (See Stats. 2002, ch. 1, § 4.)

As noted in *Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, at page 181, footnote 17 [6 Cal.Rptr.2d 714],

"[t]hat the Legislature intended to retain ultimate authority over state employees' wages, hours and working conditions is . . . demonstrated by the fact that, in its initial version, section 3532 of the act permitted the state and unions to reach 'binding agreements,' but this language was transferred to and amended in section 3517.5 to require submission of memoranda of understanding to the Legislature for approval. (Sen. Amend. to Sen. Bill No. 839 (1977–1978 Reg. Sess.) Apr. 25, 1987; Assem. Amend. to Sen. Bill No. 839 (1977–1978 Reg. Sess.) Aug. 31, 1977.)"

Thus, section 6.12(E) of the MOU is not designed solely to protect the rights of the parties to the contract from alteration of the agreement by the arbitrator; it also assures the Legislature that the MOU it approves is the parties' actual contract, that there are no off-the-record agreements to which it is not privy, and that the MOU will not be altered subsequently.

In accordance with the Dills Act, the parties submitted the MOU to the Legislature for its approval. DPA contends that the MOU the Legislature approved included the 10,000-hour cap in section 10.13(B), which cannot be "reformed" without further legislative ratification. CCPOA claims that only the agreed-upon alterations to the prior MOU, rather than the entire MOU, were presented to the Legislature and that because only the revision of section 10.13(A) was submitted for legislative approval, that is all it saw, which means it necessarily agreed to the elimination of the time cap when it approved the revision.

CCPOA's argument is unpersuasive. When the law requires that an MOU be submitted to the Legislature for approval, it is bad practice for the parties to the MOU to submit only parts of it to the Legislature. In our system of laws, courts ordinarily presume the Legislature was aware of all the provisions of an MOU that the Legislature was responsible for reviewing before voting to approve the MOU. (Evid. Code, § 664.) But under the circumstances here, it appears that the Legislature did not review the entire MOU before voting to approve the MOU. Nevertheless, we cannot conclude that the Legislature approved a complete elimination of the time cap for RTB donations. This is so for the following reasons.

The prior MOU between CCPOA and DPA, which was approved by the Legislature, included a 10,000-hour cap on accumulated RTB leave in both subdivisions (A) and (B) of section 10.13. Section 10.13(A) limited the number and timing of leave donations to the RTB, limited the withdrawal of time from the RTB to 10,000 hours per year, and limited how the 10,000 hours would be divided among various departments. Section 10.13(B) pro-

vided: "In no case shall CCPOA accumulate or use more than ten thousand (10,000) CTO and/or vacation hours from the bank during the term of this MOU." The new written MOU between CCPOA and DPA struck the limiting language from section 10.13(A), but did not alter the limitation in section 10.13(B).

We presume that in acting on the new MOU, the Legislature was aware of the terms of the prior MOU. In this light, the elimination of the RTB leave donation and distribution restrictions in section 10.13(A) of the MOU does not necessarily imply that the parties intended to eliminate the 10,000-hour cap from section 10.13(B) of the MOU. Rather, it could be understood to mean that the cap in section 10.13(A) was removed simply because it was duplicative of the existing cap in section 10.13(B). Therefore, even if the Legislature had before it only the portions of the written MOU that were submitted to it by the parties, and even, if as CCPOA suggests, the Legislature failed to review the entire written MOU it voted to approve, it does not follow that the Legislature's approval of the written MOU constituted approval of a complete elimination of the 10,000-hour time cap.

Our conclusion is supported by the fact that, contrary to CCPOA's assertion otherwise, the elimination of the 10,000-hour cap has significant fiscal consequences that must be approved unequivocally by the Legislature. There is a vast difference between the current budgetary effects of employees using RTB leave time on an annually capped basis, and employees using RTB leave time on an unlimited basis. Whether the leave is used now, or is used later, affects the Legislature's ability to plan and budget for employee salary obligations. Where the RTB use is capped, the cost is spread out, and the maximum that can be used in any given year is a known quantity. The same is not true absent the 10,000-hour cap.

In sum, by reforming the written MOU in a manner that changed the provisions approved by the Legislature, the arbitrator violated the Dills Act and the important public policy of legislative oversight of employee contracts. Consequently, the arbitrator exceeded her powers, and the superior court properly granted the petition to vacate the arbitration award.

II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

_____

* See footnote, *ante*, page 1193.

## DISPOSITION

The judgment vacating the arbitration award is affirmed.

Nicholson, J., and Cantil-Sakauye, J., concurred.

A petition for a rehearing was denied July 26, 2007, and appellant's petition for review by the Supreme Court was denied September 25, 2007, S155203.