Filed 2/13/14  Hedges v. City of Los Angeles CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARK HEDGES, | B240475 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC056010) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. David S. Milton, Judge.  Reversed and remanded.

Mark Hedges, in pro. per., for Plaintiff and Appellant.

Mike Feuer, City Attorney, Kjehl T. Johansen, Deputy City Attorney, for Defendant and Respondent.

_____

Plaintiff and appellant, Mark Hedges, sued defendant and respondent the City of Los Angeles for damages after he was detained pursuant to Welfare and Institutions Code sections 5150[1] and 5250.[2]  Respondent's demurrer was sustained without leave to amend, with the trial court finding that appellant's failure to comply with the Government Tort Claims Act (Gov. Code, § 900, et seq.) barred all of his causes of action.  Because we find that appellant has demonstrated a reasonable possibility of amending his complaint to allege an action under 42 United States Code section 1983 (section 1983), we reverse the judgment.

---

[1]  Welfare and Institutions Code section 5150 provides:  "When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Social Services as a facility for 72-hour treatment and evaluation.  [¶]  The facility shall require an application in writing stating the circumstances under which the person's condition was called to the attention of the officer, member of the attending staff, or professional person, and stating that the officer, member of the attending staff, or professional person has probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled.  If the probable cause is based on the statement of a person other than the officer, member of the attending staff, or professional person, the person shall be liable in a civil action for intentionally giving a statement which he or she knows to be false."

[2]  Welfare and Institutions Code section 5250 provides, in relevant part:  "If a person is detained for 72 hours . . . and has received an evaluation, he or she may be certified for not more than 14 days of intensive treatment related to the mental disorder . . . under the following conditions:  [¶]  (a) The professional staff of the agency or facility providing evaluation services has analyzed the person's condition and has found the person is, as a result of mental disorder . . . a danger to others, or to himself or herself, or gravely disabled."

## BACKGROUND

### Allegations

Hedges filed suit against the Los Angeles Police Department (the City), Los Angeles County Department of Mental Health (the County), and Marcy Gray Rubin on June 9, 2011. The relevant pleading, Hedges' First Amended Complaint (FAC), was filed on June 10, 2011. Because this appeal comes to us after a demurrer sustained without leave to amend, for purposes of review we assume that the allegations are true. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

The first page of the FAC alleges that Hedges attended therapy with Rubin, a licensed marriage and family therapist, from March 2010 to June 2010. Rubin tricked Hedges into telling her "secret stuff." The second page of the FAC appears to be missing from the record. Reading the FAC in conjunction with the original complaint, we discern that Hedges further alleges that when he realized he was tricked by Rubin he fired her.

According to Hedges' complaint, he had reported concerns of criminal activity to authorities, mentioning apparently staged suicides of notable political activists. Around this time, he sent a text message to his sister telling her that he would never hurt himself, and that if anyone found him dead, it would be because of a murder staged to look like a suicide. Hedges' sister called Rubin to discuss the content of the message.

On June 10, 2010, Rubin called the department of mental health, which in turn called the police department. The police department searched Hedges' text messages and incorrectly recorded the content of the text message to his sister—writing that Hedges had threatened his own life rather than warning his sister that any apparent suicide would be staged. The police department then determined that Hedges was at a laundromat and sent a marked car with uniformed officers to handcuff him. Hedges demanded an attorney but was not granted one.

The FAC states that Hedges was transported to a mental health facility, where the staff psychiatrist told him that he was delusional and threatened him with incompetency and permanent incarceration. To appease the psychiatrist, Hedges took medication that the psychiatrist prescribed, even though it violated Hedges' religious beliefs. Because of

3

Hedges' disapproval of the medication, as well as his challenges to probable cause for detainment, the psychiatrist labeled him "'paranoid'" and "'not aware of a mental disorder.'"

According to the FAC, Hedges suffered severe emotional distress and mental anguish. Further, during his internment, he was hit over the head with a steel bar by a painter. Moreover, during the confinement, his elderly cat became severely dehydrated, leading to her eventual death. Hedges also missed wages by being unable to work at his normal job as a computer programmer.

Hedges alleges that on June 17, 2010, the superior court clarified that his text message to his sister did not indicate an intent to harm himself and ruled that his rights had been denied without probable cause. Hedges further states that defendants did not have probable cause to detain him or declare him incompetent, and that their actions constituted false arrest. Hedges' FAC states, in list format, a litany of violations for which he believes defendants are liable.

**Procedural Background**

The City filed a demurrer to the first amended complaint in August 2011. It argued that the FAC did not state facts sufficient to constitute a cause of action and that Hedges failed to comply with the claims statutes of the Government Tort Claims Act. Hedges' FAC did not allege facts showing that, prior to filing his lawsuit, he timely filed a claim for money or damages with the City, or that such a filing was excused. The City further relied on a declaration stating that Hedges had failed to file a claim or petition to file an untimely claim.

Hedges did not file an opposition to the demurrer. At the hearing in October 2011, Hedges argued that he could avoid the Government Tort Claims Act's requirements by pleading a cause of action pursuant to section 1983. The trial court initially indicated an intent to sustain the City's demurrer but grant leave to amend. After the City argued that Hedges was unable to plead around the Government Tort Claims Act, however, the trial court decided to sustain the demurrer without leave to amend.

4

Hedges appealed from the order sustaining the demurrer without leave to amend.[3] Such an order is not appealable. (*Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1019.) In the interest of judicial economy, however, we will treat the order as incorporating a judgment of dismissal and decide the appeal on the merits. (See *ibid.*)

We review the ruling sustaining the demurrer de novo, exercising independent judgment regarding whether the complaint states a cause of action as a matter of law. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.) We give the complaint a reasonable interpretation, treating the demurrer as admitting all material facts properly pleaded, but not assuming the truth of contentions, deductions or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) A demurrer tests the legal sufficiency of the complaint. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) As such, we are not concerned with the difficulties a plaintiff may have in proving the claims made in the complaint. (*Desai*, at p. 1115.) We are also unconcerned with the trial court's reasons for sustaining the demurrer, as it is the ruling, not the reasoning, that is reviewable. (*Sackett v. Wyatt* (1973) 32 Cal.App.3d 592, 598, fn. 2.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of

---

[3] Hedges also attempted to appeal from proceedings relating to Rubin. Rubin was dismissed with prejudice from the case on October 13, 2011, with the trial court, pursuant to stipulation, retaining jurisdiction to entertain a motion to seal portions of the record. On January 6, 2012, the trial court was scheduled to hear a motion to seal, among other things. Before it could rule, however, it received a document filed by Hedges that the trial court interpreted as a request for recusal, and the court took the motion to seal off calendar. On August 2, 2012, this Court issued an order concluding that the January 6, 2012, hearing was not appealable because "an order taking a matter off calendar is not a final order within the meaning of Code of Civil Procedure § 904.1(a)(2)."

discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.  [Citation.]"  (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.)

Hedges' FAC only contained state law causes of action.  These causes of action were properly disposed of by demurrer because Hedges failed to comply with the Government Tort Claims Act.  The Government Tort Claims Act "establishes certain conditions precedent to the filing of a lawsuit against a public entity."  (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1237.)  It requires a plaintiff seeking money or damages from a public entity to timely present a claim to the entity before filing suit.  (*Id.* at p. 1239.)  A complaint that fails to allege facts demonstrating or excusing compliance with the claim presentation requirement is subject to demurrer for failure to state facts sufficient to constitute a cause of action.  (*Id.* at p. 1243.)  These requirements have been held to comply with due process.  (*Id.* at p. 1245.)

Hedges did not allege that he complied with the claim presentation requirement or was excused from doing so.  For this reason, the demurrer was properly sustained.

Nevertheless, at oral argument in the trial court, and on appeal, Hedges identified a claim that he may be able to adequately allege.  The Government Tort Claims Act claim presentation requirement does not apply to a cause of action brought pursuant to section 1983.  (*State of California v. Superior Court, supra,* 32 Cal.4th at p. 1240.)  The primary purposes of section 1983 are "compensation and deterrence 'for violations of federal rights committed by persons acting under color of state law.'"  (*Pitts v. County of Kern* (1998) 17 Cal.4th 340, 348.)  Local governments, such as the City, are "persons" for purposes of section 1983 and can, in appropriate circumstances, be sued directly for monetary, declaratory, or injunctive relief.  (*Id.* at p. 348-349.)

Hedges' FAC alleges, among other things, that the City's police officers violated his rights.  As the City points out, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  (*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 691.)  A municipality can be liable, though, where "the action that is alleged to be unconstitutional implements or executes a policy statement,

6

ordinance, regulation, or decision officially adopted and promulgated by that body's officers.  Moreover, . . . local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  (*Id.* at pp. 690-691.)  "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  (*Id.* at p. 694.)  In order for a municipality to be liable under section 1983, it must act with a requisite degree of culpability and there must be a direct causal link between the municipal action and the deprivation of the plaintiff's federal rights.  (*Board of Comm'rs of Bryan Cty. v. Brown* (1997) 520 U.S. 397, 404.)

The FAC does not adequately allege a cause of action based on section 1983.  We find, however, that Hedges has demonstrated a reasonable possibility that he can cure the defects in his complaint by alleging a section 1983 cause of action that meets the applicable pleading requirements.  Therefore, Hedges should be allowed the opportunity to file a further amended complaint.

## DISPOSITION

We deem the order sustaining the City's demurrer without leave to amend to have incorporated a judgment of dismissal.  The judgment is reversed and, on remand, the trial court is directed to grant Hedges leave to file an amended complaint.

Following remittitur, the Presiding Judge of the Los Angeles Superior Court shall assign the case to a different trial judge for further proceedings.  (Code Civ. Proc., § 170.1, subd. (c).)  Hedges is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.          CHAVEZ, J.

7