[No. B223433. Second Dist., Div. Four. Apr. 18, 2011.]

KELLY SUTHERLIN McLEOD ARCHITECTURE, INC., et al., Plaintiffs and Appellants, v.
MICHAEL D. SCHNEICKERT, Defendant and Appellant.

520

**COUNSEL**

Rutan & Tucker, Steven J. Goon and Robert H. Marcereau for Plaintiffs and Appellants.

Elkins Kalt Weintraub Reuben Gartside, Jeffrey K. Riffer and Susan C.V. Jones for Defendant and Appellant.

**OPINION**

**SUZUKAWA, J.**—After engaging in contractual arbitration, the parties filed competing petitions in superior court to vacate and confirm the arbitrator's award. The superior court corrected the arbitrator's award and confirmed the award as corrected. Both parties appealed from the judgment confirming the corrected award.

The primary issue on appeal is whether the superior court erred in correcting the award by striking the compelled retraction of defendant's defamatory statements (the retraction order). The superior court concluded that by compelling defendant to retract his defamatory statements in violation of the free speech provision of the First Amendment of the United States Constitution, the arbitrator had exceeded his powers.

In the main appeal, defendant agrees that the arbitrator exceeded his powers, but argues that the superior court should have vacated the entire award. In the cross-appeal, plaintiffs disagree that the arbitrator exceeded his powers and argues that the superior court should have confirmed the entire award.

We conclude that although the arbitrator was empowered to compel a limited retraction of the defamatory statements, he exceeded his powers by inserting certain language, including an apology, in the letter of retraction. We

further conclude that because the language may be stricken without affecting the merits of the award, the judgment shall be reversed and remanded with directions to reinstate the retraction order, as amended, and to confirm the award as corrected.

## BACKGROUND

Defendant Michael D. Schneickert hired plaintiff Kelly Sutherlin McLeod Architecture, Inc. (KSMA), to renovate and restore Schneickert's historic residence · in Pasadena. The parties entered into an architectural services contract (the contract), which contained an arbitration clause. The arbitration clause stated in relevant part that, "[a]ny claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration," that the arbitrator's award "shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof," and that the arbitration would be conducted "in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association."

After a dispute arose under the contract, the parties filed related superior court actions. KSMA filed a complaint against Schneickert, who was not served, for breach of contract, specific performance, quantum meruit, account stated, foreclosure of mechanic's lien, defamation, and declaratory relief. Schneickert filed a complaint against KSMA's principal, Kelly Sutherlin McLeod, for professional negligence, conversion, fraud, and violation of the unfair competition law.[1] (Bus. & Prof. Code, § 17200.)

KSMA submitted its claims against Schneickert to contractual arbitration and obtained a stay of its complaint. In light of his pending arbitration with KSMA, Schneickert agreed to submit his complaint to the same arbitration. Pursuant to the parties' stipulation, the superior court stayed both actions while the parties voluntarily pursued contractual arbitration of their respective claims.

As previously mentioned, the main issue on appeal is whether the arbitrator exceeded his powers by requiring a published retraction of Schneickert's defamatory statements (the retraction order). Our discussion is focused with this issue in mind.

During arbitration, KSMA presented evidence that Schneickert made false and defamatory statements to persons in the historic restoration community regarding KSMA's performance of the contract. Consistent with the prayer in

---

[1] Hereafter, where appropriate, references to KSMA will include McLeod.

its complaint, KSMA submitted to the arbitrator a request for "a full retraction of [Schneickert's] defamatory statements against KSMA and its principal to the effect that neither KSMA nor its principal engaged in any misconduct, nor were negligent in performing any duties. This retraction shall be sent to the same people to whom Mr. Schneickert sent his malicious lies."

In the March 6, 2009 interim award, the arbitrator found Schneickert's comments to be defamatory and granted KSMA's request for a retraction of the defamatory remarks. The arbitrator stated that Schneickert's "comments were unprivileged, defamatory and clearly beyond 'rhetorical hyperbole.' Claimant is entitled to such sum as both per se and punitive damages and a retraction as shall be determined by the Arbitrator after a further telephonic hearing . . . ."

After the interim award was issued, the parties filed postarbitration briefs on the proposed retraction order. Although Schneickert's postarbitration brief is not contained in our record, we infer from KSMA's postarbitration brief that Schneickert's brief contained an objection based on a claim that the arbitrator lacked authority to compel a retraction of the defamatory statements. In response to that objection, KSMA cited *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 389 [36 Cal.Rptr.2d 581, 885 P.2d 994] (*Advanced Micro Devices*) and the American Arbitration Association's Construction Industry Arbitration Rules and Mediation Procedures (AAA Rules). KSMA argued that arbitrators are empowered to grant equitable relief, including mandatory injunctions, and that "[a]rbitrators have even greater authority to issue equitable relief than the courts." KSMA also pointed out that Schneickert had agreed to be bound by the AAA Rules, which place no limits on the arbitrator's authority to grant the appropriate equitable relief. KSMA stated that unless a "retraction is ordered to undo some of the damage caused by Mr. Schneickert's [defamatory remarks], KSMA's damages should be increased accordingly."

After considering the parties' postarbitration briefs on the proposed retraction order, the arbitrator issued a March 30, 2009 supplemental interim award in which he cited *Advanced Micro Devices* and rule R-44 of the AAA Rules in support of his authority to select "such remedies as are consistent with the evidence presented which are just and equitable." The arbitrator stated that a compelled retraction was an appropriate equitable remedy because the defamatory statements were causing continuing harm to KSMA's reputation that was difficult to measure.

In the July 27, 2009 final award, the arbitrator awarded KSMA monetary damages ($100,000 as damages per se and $250,000 as punitive damages)

and ordered Schneickert to issue a retraction of the defamatory remarks.[2] The retraction order, which is the main issue on appeal, required Schneickert to distribute the following letter of retraction:

"[Current Date]

"Pasadena Heritage, Board of Directors

"And Others Whom It May Concern

"Subject: Retraction of False Statements

"Dear Gentlepersons:

"After a full hearing, an Arbitrator has determined that various statements I made, both orally and in writing, concerning Kelly Sutherlin McLeod Architecture, Inc. and Kelly Sutherlin McLeod personally, (collectively, 'KSMA') relating to KSMA's services for my home at 1330 Hillcrest Avenue were false and defamatory.

"These false statements are specifically my remarks that KSMA: (1) stole from me; (2) is a 'crook'; (3) is a 'criminal'; (4) is a 'thief'; (5) misappropriated lighting designs from my home; (6) committed fraud; (7) was responsible for an illegal bulldozing/demolition of my guest house; and (8) was responsible for my home restoration project being 'red-tagged' by the City of Pasadena.

"I hereby retract these statements and apologize for any misconceptions such statements may have caused as well as any damage such statements may have done to KSMA's reputation.

"Sincerely,

"Michael D. Schneickert"

The parties filed competing petitions in superior court to vacate and confirm the final award. The superior court concluded that the arbitrator had exceeded his powers by requiring a retraction of the defamatory remarks in violation of the free speech provision of the First Amendment. The superior court stated in relevant part that "the First Amendment protects against compelled speech. Although some federal courts have permitted compelled

---

[2] As to the contract claim, the arbitrator awarded KSMA $62,738.96 plus interest from July 31, 2006.

retractions, no California court has done so. This court declines to enforce the compelled speech of the letter of retraction as it is in violation of the rights to freedom of speech."

After correcting the award by vacating the retraction order, the superior court entered a judgment confirming the award as corrected. (Code Civ. Proc., § 1286.6, subd. (b) [superior court may correct and confirm the award as corrected if the arbitrator exceeded his or her powers and the award may be corrected without affecting the merits of the decision].)[3] Both parties appealed from the judgment confirming the corrected award. They each contend that the superior court erred in failing to grant their respective petitions in full.

Schneickert argues that the superior court should have vacated the entire award because (1) the retraction order violates public policy—the free speech provisions of the state and federal Constitutions—and the award cannot be corrected without affecting the merits of the arbitrator's decision (§ 1286.2, subd. (a)(4) [superior court shall vacate the award if the arbitrator exceeded his or her powers and the award cannot be corrected without affecting the merits of the decision]) and (2) he was substantially prejudiced by the arbitrator's denial of his motion to compel production of evidence of economic loss resulting from the defamatory statements (§ 1286.2, subd. (a)(5) [superior court shall vacate the award if the rights of the party were substantially prejudiced by the arbitrator's refusal to hear evidence material to the controversy]).

KSMA argues that the superior court should have confirmed the entire award because (1) false and defamatory statements are not protected speech and, therefore, their compelled retraction does not violate an explicit, well-defined, and dominant public policy and (2) there are no valid grounds for vacating the retraction order.

Before oral argument, we issued a letter requesting that the parties address whether any part of the letter of retraction included in the arbitrator's award is valid. We have considered the parties' responses in the discussion below.

## DISCUSSION

I. *The Arbitrator Was Authorized to Grant the Requested Relief of a Retraction of the Defamatory Statements*

Under section 1286, the superior court has only four options when a petition to confirm or vacate an arbitration award is filed. The superior court

---

[3] All further undesignated statutory references are to the Code of Civil Procedure.

may (1) confirm the award as made; (2) correct the award and confirm it as corrected; (3) vacate the award; or (4) dismiss the proceeding.

In *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 25 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*), the California Supreme Court "rejected a line of earlier cases that had held or suggested that notwithstanding these statutory criteria for vacating an arbitration award, an award may also be vacated when an error of law appears on the face of the arbitrator's decision and causes substantial injustice. (*Moncharsh, supra*, 3 Cal.4th at p. 13.) Instead, after an extensive review of the historical development of arbitration and judicial review of arbitration awards, the court made clear ' "that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute." ' (*Id.* at p. 25.) [Fn. omitted.]" (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 676 [108 Cal.Rptr.3d 171, 229 P.3d 83] (*Pearson*).)

■ The court in *Moncharsh* also "rejected the argument that Code of Civil Procedure section 1286.2, subdivision (d) (now subd. (a)(4)), which authorizes an arbitration award to be vacated if the arbitrators 'exceeded their powers,' was a basis for reviewing errors of law in an arbitration award. 'It is well settled that "arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision." [Citations.] A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers. . . .' (*Moncharsh, supra*, 3 Cal.4th at p. 28.)" (*Pearson, supra*, 48 Cal.4th at p. 676.)[4]

"In determining whether an arbitrator exceeded his powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his contractual authority. ([*Advanced Micro Devices*], *supra*, 9 Cal.4th at p. 376, fn. 9 . . . .)" (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443–444 [123 Cal.Rptr.2d 122] (*Jordan*).)

A. *The Arbitrator's Powers Derive from the Parties' Arbitration Agreement and Submission of Issues*

■ An arbitrator's powers "derive from, and are limited by, the agreement to arbitrate. (*Moncharsh, supra*, 3 Cal.4th at p. 8.) 'Although [Code of

---

[4] In *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1340 [82 Cal.Rptr.3d 229, 190 P.3d 586], the Supreme Court held that the parties may expressly provide in an arbitration agreement for expanded judicial review. The contract in this case does not contain such a provision.

Civil Procedure] section 1286.2 permits the court to vacate an award that exceeds the arbitrator's powers, the deference due an arbitrator's decision on the merits of the controversy requires a court to refrain from substituting its judgment for the arbitrator's in determining the contractual scope of those powers. [Citations.]' ([*Advanced Micro Devices*], *supra*, 9 Cal.4th at p. 372.)" (*Jordan, supra*, 100 Cal.App.4th at p. 444.)

■ The arbitrator's powers may be expanded or restricted by the scope of the issues submitted to arbitration. (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1437–1438 [111 Cal.Rptr.3d 468] (*Greenspan*).) " 'The parties may submit for decision issues they were not contractually compelled to submit to arbitration. In such event, courts look both to the contract *and* to the scope of the submissions to determine the arbitrator's authority.' (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2009) ¶ 5:473.1, pp. 5-326 to 5-327 . . . ; accord, *J.C. Gury Co. v. Nippon Carbide Industries (USA) Inc.* (2007) 152 Cal.App.4th 1300, 1305–1306 [62 Cal.Rptr.3d 118].) ' " ' ". . . Arbitration submissions are usually construed as broadly as possible in order that differences between the parties may be resolved quickly and economically. Under the [principle] of broad construction *an arbitrator is authorized to determine all questions which he needs to determine in order to resolve the controversy submitted to him, and the arbitrator himself decides which questions need to be determined.*" . . .' . . . 'If participants in the arbitral process begin to assert all possible legal or procedural defenses in court proceedings before the arbitration itself can go forward, the arbitral wheels would very soon grind to a halt.' " ' (*Kennedy, Cabot & Co. v. National Assn. of Securities Dealers, Inc.* (1996) 41 Cal.App.4th 1167, 1175 [49 Cal.Rptr.2d 66], citations omitted, italics added.)" (*Greenspan, supra*, 185 Cal.App.4th at p. 1438.)

### B. *The Arbitrator Was Empowered to Grant Any Just and Equitable Remedy That Is Within the Scope of the Contract*

In this case, the parties agreed to apply the AAA Rules. Under AAA Rules, rule R-45(a), the arbitrator may "grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, equitable relief and specific performance of a contract." This rule, when read in conjunction with KSMA's submission of a request for a published retraction of defamatory statements, compels the conclusion that the arbitrator was empowered to grant any remedy or relief that is just and equitable and within the scope of the contract, including a published retraction of defamatory statements.

■ Although a California court arguably may not have the power to compel a party to retract defamatory statements, the parties may allow an

arbitrator to do so. As the California Supreme Court explained in *Advanced Micro Devices*: "[A]rbitrators are not generally limited to making their award ' "on principles of dry law." ' (*Moncharsh, supra*, 3 Cal.4th at p. 11.) For that reason, parties who submit their disputes to arbitration ' " 'may expect not only to reap the advantages that flow from the use of that nontechnical, summary procedure, but also to find themselves bound by an award reached by paths neither marked nor traceable and not subject to judicial review.' [Citations.]" ' (*Ibid.*) [¶] As New York's highest court expressed the same idea, '[i]n the final analysis "Arbitrators may do justice" and the award may well reflect the spirit rather than the letter of the agreement [citation]. . . . In other words *a court may not vacate an award because the arbitrator has exceeded the power the court would have*, or would have had if the parties had chosen to litigate, rather than arbitrate the dispute. Those who have chosen arbitration as their forum should recognize that arbitration procedures *and awards* often differ from what may be expected in courts of law.' (*Rochester City School Dist.* v. *Rochester Teachers Assn.* (1977) 41 N.Y.2d 578 [362 N.E2d 977], italics added.) [¶] This principle applies fully to arbitral awards of nonmonetary relief. 'Arbitrators have broad discretion in fashioning a remedy for the injustice which is found to have occurred.' (*Baltimore County* v. *Mayor & City Council of Baltimore* (1993) 329 Md. 692 [621 A.2d 864].) ▮ Because the parties to an arbitration have the freedom to determine the rules by which their dispute will be resolved, including the scope of available relief, 'courts will uphold awards of specific performance by arbitrators in instances in which the equitable remedy would not have been available if the dispute had originally been litigated in court.' (1 Domke on Commercial Arbitration (rev. ed. 1994) § 30.01, p. 441.) As one federal court succinctly stated, '[a]n arbitration panel may grant equitable relief that a Court could not.' (*Sperry International Trade, Inc.* v. *Government of Israel* (S.D.N.Y. 1982) 532 F.Supp. 901, 905, affd. 689 F.2d 301 (2d Cir. 1992).)" (*Advanced Micro Devices, supra*, 9 Cal.4th at pp. 388–389.)

"The choice of remedy, then, may at times call on any decisionmaker's flexibility, creativity and sense of fairness. In private arbitrations, the parties have bargained for the relatively free exercise of those faculties. Arbitrators, unless specifically restricted by the agreement to following legal rules, ' "may base their decision upon broad principles of justice and equity . . . ." [Citations.] As early as 1852, this court recognized that, "The arbitrators are not bound to award on principles of dry law, but may decide on principles of equity and good conscience, and make their award *ex aequo et bono* [according to what is just and good]." [Citation.]' (*Moncharsh, supra*, 3 Cal.4th at pp. 10–11.) [Fn. omitted.] Were courts to reevaluate independently the merits of a particular remedy, the parties' contractual expectation of a decision according to the arbitrators' best judgment would be defeated." (*Advanced Micro Devices, supra*, 9 Cal.4th at pp. 374–375.)

■ In this case, the contract allowed the arbitrator to grant equitable relief, including the compelled retraction of defamatory statements. "Equitable relief is by its nature flexible, and the maxim allowing a remedy for every wrong (Civ. Code, § 3523) has been invoked to justify the invention of new methods of relief for new types of wrongs. [Citation.]" (*Advanced Micro Devices, supra,* 9 Cal.4th at p. 390.) "In light of the inherently flexible nature of equitable remedies, the principle of arbitral finality which forbids judicial inquiry into the legal correctness of the arbitrator's decisions on submitted issues, and the related principle that remedies available to a court are only the *minimum* available to an arbitrator (unless restricted by agreement) . . ." (*id.* at pp. 390–391), we conclude that the order did not exceed the arbitrator's powers simply because the same relief is not or might not be available in a judicial action.

### C. The Arbitrator's Award Is Not Unauthorized by Law and Does Not Violate Public Policy

■ The courts may vacate an arbitration award under limited circumstances. For example, an award may be vacated when an arbitrator exceeds his or her powers "by acting without subject matter jurisdiction, deciding an issue that was not submitted to arbitration, arbitrarily remaking the contract, upholding an illegal contract, issuing an award that violates a well-defined public policy or a statutory right, fashioning a remedy that is not rationally related to the contract, or selecting a remedy not authorized by law. (See *Jordan*[, *supra,*] 100 Cal.App.4th [at p.] 443 . . . ; see also *Moncharsh*[, *supra,*] 3 Cal.4th [at pp.] 31–33 . . . [discussing application of § 1286.2, subd. (a)(4), to illegal contracts]; *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 889–893 [64 Cal.Rptr.2d 484] [same].)" (*Greenspan, supra,* 185 Cal.App.4th at p. 1436.)

In this case, the superior court found that the arbitrator had exceeded his powers by issuing an award that violates public policy, namely, the free speech provision of the First Amendment.[5] Schneickert concurs, claiming that a court has never ordered a public retraction or apology.

■ The issue here is whether the arbitrator's order compelling Schneickert to send a communication to third parties violates Schneickert's right of free speech.[6] We conclude the answer is "no." Where, as here, statements of a

---

[5] The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (U.S. Const., 1st Amend.)

[6] We recognize that the First Amendment bars the government from infringing on one's right of free speech. (*Grinzi v. San Diego Hospice Corp.* (2004) 120 Cal.App.4th 72, 81 [14

party have been determined to be false and are the bases for finding liability, courts have approved orders requiring the parties to correct those statements. (*Peregrine Myanmar Ltd. v. Segal* (2d Cir. 1996) 89 F.3d 41, 52; *Telxon Corp. v. Symbol Technologies, Inc.* (N.D. Ohio 1996) 961 F.Supp. 1113, 1124–1125; but see *Kramer v. Thompson* (3d Cir. 1991) 947 F.2d 666, 680–682 [reversing retraction order issued by the trial court].) Our Supreme Court has recognized that limitations on free speech are proper where the speech at issue has been adjudged to be defamatory. (*Balboa Island Village Inn, Inc. v. Lemen* (2007) 40 Cal.4th 1141, 1158 [57 Cal.Rptr.3d 320, 156 P.3d 339] [injunction restraining defendant from repeating defamatory statements did not violate 1st Amend.].) Contrary to Schneickert's assertion, there is no clear bright line barring a court from issuing a correction order. We see nothing improper with an arbitrator issuing a tailored correction order after determining that a party made false statements with malicious disregard for the truth. Neither the law nor public policy mandates the nullification of such a remedy that was the result of an arbitration proceeding both parties bargained for.[7]

Although we conclude there is nothing inherently improper with the concept of requiring Schneickert to inform particular individuals that his prior statements were found to be false, we must address the language contained in the final paragraph of the letter of retraction: "I hereby retract these statements and apologize for any misconceptions such statements may have caused as well as any damage such statements may have done to KSMA's reputation."

Schneickert contends that being forced to apologize is both "humiliating" and "degrading." Although KSMA asserts that the arbitrator was empowered to require an apology, it argues that, at a minimum, the award should be confirmed without the apology. We find the arbitrator exceeded his authority by inserting the last paragraph of the letter of retraction, as it goes beyond simple communication of facts and improperly compels the expression of opinion.

---

Cal.Rptr.3d 893].) Generally, an arbitration award does not involve state action because it simply has the legal effect of a contract in writing between the parties to the arbitration. (*Jones v. Kvistad* (1971) 19 Cal.App.3d 836, 840 [97 Cal.Rptr. 100].) However, a proceeding confirming an arbitration award and converting it into a judgment has been held to constitute state action. (*Rifkind & Sterling, Inc. v. Rifkind* (1994) 28 Cal.App.4th 1282, 1291–1292 [33 Cal.Rptr.2d 828].) KSMA does not contend there is no state action in this case.

[7] Although Schneickert asserts the arbitrator's order is an improper restraint on his right of free speech, the order does not enjoin Schneickert from sending other communications to the same parties.

█ "An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field, the State may not employ 'means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' [Citation.] In other words, the order must be tailored as precisely as possible to the exact needs of the case." (*Carroll v. Princess Anne* (1968) 393 U.S. 175, 183–184 [21 L.Ed.2d 325, 9 S.Ct. 347].) In determining whether the language in question unduly stifles Schneickert's personal liberties, the question we must answer is: What are the exact needs of this case?

KSMA sought relief from Schneickert's dissemination of false and defamatory statements to certain parties. The primary purpose of the action was to correct the record. Thus, the exact needs of this case are to make clear that Schneickert's claims were deemed by a fact finder to be defamatory and to communicate that finding. The arbitrator was therefore authorized to craft an order "couched in the narrowest terms" to accomplish that objective. (*Carroll v. Princess Anne, supra*, 393 U.S. at p. 183.) An order requiring Schneickert to advise those to whom he communicated the statements at issue that they were found by an arbitrator to be defamatory is narrowly tailored to redress the violation. (See *Peregrine Myanmar Ltd. v. Segal, supra*, 89 F.3d at p. 52 [order requiring defendant to inform all appropriate parties that she had no direct ownership interest or authority in corporate entities after communicating that she had was appropriate because there was a "close linkage between the retraction remedy and the specific legal violations at issue here"].) Such an ordered communication is a narrow factual correction that remedies the harm and does not require Schneickert to offer an opinion about the outcome.

We cannot say the same with respect to the first line of the second paragraph and the final paragraph of the letter of retraction. The first line in the second paragraph begins with: "These false statements are specifically my remarks that KSMA . . . ." The word "false" may suggest that Schneickert agrees with the arbitrator's finding that Schneickert's statements are false. Out of an abundance of caution, we will amend the first line of the second paragraph to read: "These statements are . . . ."

█ The final paragraph of the letter of retraction states: "I hereby retract these statements and apologize for any misconceptions such statements may have caused as well as any damage such statements may have done to KSMA's reputation." The paragraph adds two additional components, beyond

a correction, that compel Schneickert to express subjective feelings that are unnecessary to redress the violation. First, he must state that he retracts his prior statements. To "retract" means to "take back," "withdraw," "disavow," or "recant." (Webster's 9th New Collegiate Dict. (1983) p. 1007.) This suggests a belief that the words should not have been spoken in the first place. Second, he is forced to apologize for having made the statements. An apology is "an admission of error or discourtesy accompanied by an expression of regret." (*Id.* at p. 95.) Whether Schneickert wishes he had kept his opinions to himself or regrets that he failed to do so is irrelevant to the proper purpose of the arbitrator's order, which is to inform others that Schneickert's statements about KSMA and its principal are false. Although a party may be required to set the record straight, in deference to the First Amendment, he may not be compelled to include a mea culpa.

"An arbitrator exceeds his or her powers if the arbitration award violates a statutory right or otherwise violates a well-defined public policy." (*Department of Personnel Administration v. California Correctional Peace Officers Assn.* (2007) 152 Cal.App.4th 1193, 1195 [62 Cal.Rptr.3d 110].) By inserting language in the letter of retraction that impermissibly infringes on Schneickert's constitutional right of free speech, the arbitrator exceeded his authority. As a result, we will delete the word "false" from the second paragraph and strike the final paragraph of the letter of retraction.

Next, Schneickert relies on *Jordan, supra*, 100 Cal.App.4th 431, to argue that the retraction order violates public policy. We are not persuaded.

To place *Jordan*'s public policy exception in its proper context, we will briefly discuss its procedural history. In an earlier decision, the superior court invalidated a motor vehicle smog impact fee and awarded the plaintiffs $18 million in attorney fees. The State of California appealed the fee award, but dismissed the appeal after agreeing to submit the fee issue to binding arbitration. The arbitration panel increased the fee award to $88 million. The arbitration panel calculated the increased fee award as a percentage of the smog impact fee refund account that the Legislature had created in response to the earlier decision. The parties filed competing petitions to vacate and confirm the arbitration panel's $88 million fee award. The superior court vacated the award on the ground that "it was an error of law to find a common fund in this case," given that "the refund account was the result of lobbying, not lawyering. . . . The decision to award attorney fees for the legislative remedy was in excess of the arbitration panel's jurisdiction." (*Jordan, supra*, 100 Cal.App.4th at p. 442.) The appellate court affirmed, stating: "Where the state's maximum exposure is established by a judgment, a payment of more than that maximum in settlement of the dispute, without independent consideration, is a gift of public funds. In fact, since there is no

legal basis for such an award of attorney fees, it is, as Chief Justice Lucas suggests, a payment for sponsoring favorable legislation. Nothing in [Revenue and Taxation Code] section 6909[, subdivision ](b) permits a payment for sponsoring favorable legislation; its appropriation is limited to 'appropriate' attorney fees and costs. Therefore, the award is both against public policy and an unconstitutional gift of public funds." (*Jordan, supra,* at p. 451.)

*Jordan* is clearly distinguishable from this case. Unlike *Jordan,* in which the arbitration panel had no legal basis to increase the fee award, the arbitrator in this case was authorized by the parties' submission of issues to grant the requested relief, including a published letter correcting the defamatory statements. The public policy violation that existed in *Jordan* is not present in this case.

II. *Amending the Letter of Retraction Will Not Affect the Merits of the Award*

Section 1286.6 allows the superior court to correct an award if the "arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted." (§ 1286.6, subd. (b).) Schneickert asserts that altering the letter of retraction in any manner affects the merits of the arbitrator's decision. He fails to explain how it does so.[8] We do not agree that striking one paragraph of the letter of retraction has any conceivable effect on the merits of the decision, which include a correction order and an award of substantial compensatory and punitive damages. Schneickert's attempt to persuade us otherwise is unconvincing.

The cases cited by Schneickert in support of his position that the entire award must be vacated are distinguishable. For example, in *Law Offices of David S. Karton v. Segreto* (2009) 176 Cal.App.4th 1 [97 Cal.Rptr.3d 329], a party asked the trial court to correct the arbitration award by adding prejudgment interest and additional fees and costs. However, neither had been included in the award. The appellate court noted that "[t]he only possible statutory basis for correcting the award was 'an evident miscalculation of figures.' (Code Civ. Proc., § 1286.6, subd. (a).) [The party] did not seek correction of a mathematical error . . . ." (*Id.* at p. 10.) For that reason, the panel found that the trial court correctly declined to correct the award. In this case, the letter of retraction was included in the award and is subject to correction as long as doing so does not affect the merits of the decision. In *Jordan, supra,* 100 Cal.App.4th at page 454, the proposed correction would

---

[8] Schneickert cites Supreme Court authority for the proposition that the merits of a dispute include the remedies. From there, he claims that any amendment of the arbitrator's remedy must affect the merits of the decision. None of the cases upon which he relies so holds.

have reduced the award from $88 million to $18 million. The appellate court noted that the correction was based, in part, on statutory authority not cited in the arbitration. As a result, the change to the award affected the parties' arguments in the arbitration and a correction could not be made without affecting the merits of the decision. Here, the issue of a prospective letter of retraction was submitted to the arbitrator and argued by the parties. Finally, in *Sunnyvale Unified School Dist. v. Jacobs* (2009) 171 Cal.App.4th 168 [89 Cal.Rptr.3d 546], the order under review partially vacated the award and the appellate court affirmed. The case has no application here.

We conclude that amending the letter of retraction by deleting the last paragraph will not affect the merits of the arbitrator's decision.

### III. *Schneickert's Rights Were Not Substantially Prejudiced by the Denial of His Motion to Compel Production of Evidence*

Schneickert contends that the entire award must be vacated because his rights were substantially prejudiced by the denial of his motion to compel production of evidence. The contention lacks merit.

Initially, we note that Schneickert had no right to discovery. As previously discussed, the parties agreed to be bound by the AAA Rules. Those rules provide that information is to be exchanged "[a]t the request of any party or at the discretion of the arbitrator" as "the arbitrator may direct." (AAA Rules, rule R-24(a).)

Nevertheless, Schneickert argues that because the arbitrator denied his motion to compel production of evidence of monetary losses stemming from the defamatory statements, the arbitrator's award of damages on the defamation claim was based on nothing "more than a stab in the dark." He argues that KSMA failed to prove its defamation claim because it did not "introduce any evidence that it suffered any damages based on any purported defamatory remarks."

The problem with this contention is that it is inconsistent with the rule of arbitral finality. (*Moncharsh, supra,* 3 Cal.4th at p. 25.) An arbitrator does not exceed his powers merely because the evidence is insufficient to support the award. Under the rule of arbitral finality, " '[i]t is well settled that "arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision." [Citations.] A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers. . . .' (*Moncharsh, supra,* 3 Cal.4th at p. 28.)" (*Pearson, supra,* 48 Cal.4th at p. 676.) Accordingly, the issue merits no further discussion.

## DISPOSITION

The judgment is reversed with directions to delete the word "false" from the first line of the second paragraph and to strike the last paragraph from the letter of retraction and to confirm the award as corrected. KSMA is awarded its costs.

Epstein, P. J., and Manella, J., concurred.

A petition for a rehearing was denied May 12, 2011, and appellant's petition for review by the Supreme Court was denied July 13, 2011, S193571.