Filed 11/25/14  Amkor Technology v. Tessera CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| AMKOR TECHNOLOGY, INC.,<br><br>        Petitioner and Appellant,<br><br>v.<br><br>TESSERA, INC.,<br><br>        Respondent. | A139596<br><br>(City & County of San Francisco<br>Super. Ct. No. CPF-13-512796) |

Petitioner Amkor Technology, Inc. (Amkor) appeals from an order denying its petition to correct an arbitration award that it contends exceeds the arbitrators' authority. We conclude that the trial court correctly held that the petition was untimely and, in all events, lacks merit.

**Factual and Procedural History**

On May 9, 1996, Tessera, Inc. (Tessera) and Amkor entered a license agreement with respect to certain patents held by Tessera. In 2006, Tessera initiated arbitration proceedings alleging that Amkor owed Tessera royalties under the license agreement. The arbitration ended in early 2009 with the arbitrators awarding royalties to Tessera through December 1, 2008.

In August 2009, Amkor requested a second arbitration before the same panel of three arbitrators, seeking a declaration that "it is fully in compliance with the license agreement for the period after December 1, 2008." In response, Tessera filed a counterclaim seeking additional royalties from Amkor, as well as, a determination that

1

the license agreement was terminated.  This second arbitration is the subject of the present appeal.

Following hearings in December 2010 and August 2011, the panel issued "Partial Award No. 3." The panel found that "Tessera effectively exercised its express contractual rights to terminate the contract as of February 17, 2011," and awarded Tessera royalties based on Amkor's pretermination use of the patents.  The panel's termination finding and pretermination royalty award are not at issue on appeal.

The panel also awarded posttermination royalties based on Amkor's continued use of the patents after the date of termination.  Paragraph 314 of the award provides, "We also find that because Amkor has continued to manufacture products covered by the license, Tessera is entitled to royalties, at the original royalty rate from 17 February 2011, through the date of this tribunal's judgment. Further, in light of the facts that all unresolved disputes 'arising under' the agreement must be arbitrated, the tribunal has continuing jurisdiction for such a finding." The panel cited *Naimie v. Cytozyme Research Co.* (10th Cir. 1999) 174 F.3d 1104 in support of its award of posttermination royalties. Partial Award No. 3 was served on the parties on July 6, 2012.

On August 8, 2012, Amkor requested "clarification" of the award of post-termination royalties under paragraph 314. Specifically, Amkor sought "clarification as to the basis for the tribunal's award of posttermination, extra-contractual continuing royalties under the terms of reference." In support of the request, Amkor argued that the award conflicted with the plain language of the license agreement, that the panel's reliance on *Naimie* was misplaced, and that Tessera could recover posttermination damages only in a separate patent infringement action.

On November 27, 2012, the panel issued an "Addendum to Partial Award No. 3," reconfirming the award. The addendum provides that "Partial Award No. 3" should be interpreted in light of the following considerations: "In its 8 August 2012 submission to the ICC [International Chamber of Commerce], Amkor further argues that *Naimie v. Cytozyme Research Co.*, 174 F.3d 1104 (10th Cir. 1999) is distinguishable from the present case, and that Tessera did not cite *Naimie* until its final reply brief; thus, Amkor

2

claims that it never had the opportunity to respond to Tessera's argument in that regard. . . . Tessera responds that Amkor mischaracterizes the holding of *Naimie* and that its challenge to that citation is untimely. Amkor has now had full opportunity to respond to *Naimie*, and the tribunal rejects its attempts to distinguish that case."

On March 7, 2013, Amkor filed its "Petition to Correct An Arbitration Award" in San Francisco Superior Court. Following a hearing on June 14, 2013, the court denied Amkor's petition. The court found both that the petition was untimely under Code of Civil Procedure[1] section 1288 and that the arbitrators did not exceed their powers so as to justify correction of the award under section 1286.6. Amkor filed a timely notice of appeal.

## Discussion

1.      *The petition to correct is untimely.*

The trial court concluded that Amkor's petition was time barred under section 1288 which provides that "[a] petition to . . . correct an award shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." The court explained, "The portion of the arbitration for which Amkor seeks correction (i.e., paragraph 314 of the July 2012 award) existed as of July 2012; and existed in a format that was clear and not tentative. That is, it was ripe for review as of July 2012. [¶] . . . [¶] The clock under [section 1288] started ticking at the point when the moving party was served with the award, and not later when and if the arbitral panel responded to the request for interpretation. Therefore, in this instance, the July 2012 award was ripe for review in July 2012. Because Amkor waited 236 days after being served with the July 2012 award, its petition to correct an arbitral award on February 27, 2013, was untimely and the statute of limitations had run."

On appeal, Amkor argues that a new 100-day period began running when the panel issued its addendum to the partial award. It argues that the trial court improperly "rejected Amkor's challenge as untimely because it believed that only Partial Award

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise noted.

No. 3 and not the panel's subsequent addendum, can properly constitute 'the award' for purposes of section 1288's limitation period." Amkor's petition, however, did not seek to correct the November addendum. The petition sought "an order and judgment . . . correcting the tribunal's partial award, dated July 5, 2012, by striking paragraph 314 from the partial award." The addendum is not even attached to the petition. Rather it is one of numerous exhibits to a declaration submitted in support of the petition.

Moreover, the suggestion that the addendum is a separate partial judgment subject to petition for correction under section 1288 lacks merit. Amkor argues, "Under the rules of the relevant arbitral forum, the ICC, the panel's response in the form of the addendum unquestionably is a formal partial arbitration award. The addendum itself resolved issues not considered by the panel in the prior Partial Award No. 3, specifically Amkor's post-termination and *Naimie* arguments, which had not even been presented to the panel at the time of issuance of Partial Award No. 3." We disagree.

Article 29 of the ICC rules provides in relevant part as follows: "1. On its own initiative, the arbitral tribunal may correct a clerical, computational or typographical error, or any errors of similar nature contained in an award, provided such correction is submitted for approval to the court within 30 days of the date of such award. [¶] . . . [¶] 3. A decision to correct or to interpret the award shall take the form of an addendum and shall constitute part of the award." Article 29 does not expressly or implicitly toll the time for filing a petition for correction under section 1288. An order correcting a "a clerical, computational or typographical error or any errors of similar nature" is, as the rule states, an addendum to an existing award and "constitute[s] part of the award." It is not a separate award.

The addendum in this case is consistent with article 29. Contrary to Amkor's argument, the panel did not consider any new issues in the addendum. The question of the panel's jurisdiction to award post-termination royalties and the applicability of *Naimie* were squarely before the panel at the time "Partial Award No. 3" was issued. Although the panel may not have had the benefit of Amkor's interpretation of *Naimie* before it at that time, the court clearly relied on *Naimie* and the issue was decided. The

4

panel's addendum merely confirms the award, having fully considered Amkor's arguments.

Amkor also asserts for the first time on appeal that its petition is timely because, under *Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1440-1441, it is allowed to move for correction as late as 100 days after the panel's final award is issued. Amkor argues that an "aggrieved party" is not required to challenge a partial final award and retains the right to move for correction within 100 days after entry of the "ultimate final award." Amkor, however, has not moved to correct the final award. As Amkor notes, at the time it filed its motion to correct, a third phase of the arbitration was still pending. Section 1288 cannot be understood to allow the filing of a petition to correct a partial final award at anytime that the arbitration proceedings remain pending to consider other outstanding issues. Accordingly, we agree with the trial court that Amkor's petition is untimely.

2.     *The panel did not exceed its authority in issuing Partial Award No. 3.*

Under section 1286.6, subdivision (b), the court may correct an arbitration award if "[t]he arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted." "For example, an award may be vacated when an arbitrator exceeds his or her powers 'by acting without subject matter jurisdiction, deciding an issue that was not submitted to arbitration, arbitrarily remaking the contract, upholding an illegal contract, issuing an award that violates a well-defined public policy or a statutory right, fashioning a remedy that is not rationally related to the contract, or selecting a remedy not authorized by law.' " (*Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert* (2011) 194 Cal.App.4th 519, 531, citing *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 (*Jordan*).) Arbitrators do not exceed their powers, however, "merely by erroneously deciding a contested issue of law or fact." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 366 (*AMD*); *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28.)

5

Amkor contends that the panel exceeded its powers by (1) acting without jurisdiction and deciding an issue that was not submitted to arbitration and (2) awarding a remedy (post-termination royalties) that is prohibited by the License Agreement and contrary to California law. In determining whether an arbitrator exceeded his powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrators assessment of their contractual authority and their selection of a remedy. (*AMD, supra,* 9 Cal.4th at pp. 374-375, 376, fn. 9; *Jordan, supra,* 100 Cal.App.4th at pp. 443-444.)

An arbitrator's powers "derive from, and are limited by, the agreement to arbitrate." (*Jordan*, *supra*, 100 Cal.App.4th at p. 444.) The arbitrator's powers also may be expanded or restricted by the scope of the issues submitted to arbitration. (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1437–1438.) ' " ' "Arbitration submissions are usually construed as broadly as possible in order that differences between the parties may be resolved quickly and economically. Under the [principle] of broad construction an arbitrator is authorized to determine all questions which he needs to determine in order to resolve the controversy submitted to him, and the arbitrator himself decides which questions need to be determined." . . .' . . . 'If participants in the arbitral process begin to assert all possible legal or procedural defenses in court proceedings before the arbitration itself can go forward, the arbitral wheels would very soon grind to a halt.' " ' " (*Id.* at pp. 1437-1438.)

In this case, the arbitration provision in the License Agreement requires arbitration of "any disputes, controversies, claims or differences which may arise from, under, out of or in connection with this Agreement." The panel, recognizing that the phrase " 'in connection with' has been interpreted broadly to encompass all disputes having a significant relationship to the contract," concluded that it had jurisdiction to award Tessera royalties based on Amkor's continued manufacture of products covered by the license after termination of the agreement. Amkor argues that despite the breadth of the arbitration provision, the "Terms of Reference" to which the parties agreed limited the issues submitted to arbitration.

6

Section 6.1 of the terms of reference provides, "Subject to any new claims (article 19, ICC rules), the arbitral tribunal may have to consider in particular the following issues (but not necessarily all of them or any of them and not in the following order): [¶] (a) Is claimant [Amkor] in compliance with the license agreement and a licensee in good standing? [¶] (b) Has respondent [Tessera] interfered with claimants contractual relations with third parties?[¶] (c) If the agreement was materially breached by either party, what monetary damages, if any should be awarded? [¶] Does respondent have the right to terminate the license agreement? [¶] (e) Has claimant infringed any of respondent's patents that are at issue in this case? [¶] (f) If so, are those patents valid? [¶] (g) Is either party entitled to any equitable relief? [¶] (h) Has claimant interfered with respondent's prospective economic relationships with third parties?"

Amkor argues that "[t]he only determination of damages before the panel was Tessera's counterclaim for damages under the terms of the license agreement. No patent infringement claims under 35 U.S.C. § 271 et seq. were presented to the panel." However, subdivision (c) of section 6.1 authorizes the panel to determine appropriate damages if it finds that a party materially breached the license agreement, as it found Amkor to have done when it continued making use of Tessera's patents after termination of the license agreement. Moreover, subdivision (g) authorizes the arbitrators to consider whether either party is entitled to equitable relief. " 'Equitable relief is by its nature flexible, and the maxim allowing a remedy for every wrong (Civ.Code, § 3523) has been invoked to justify the invention of new methods of relief for new types of wrongs.' " (*Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert, supra,* 194 Cal.App.4th at p. 531 ["In light of the inherently flexible nature of equitable remedies, the principle of arbitral finality which forbids judicial inquiry into the legal correctness of the arbitrator's decisions on submitted issues, and the related principle that remedies available to a court are only the minimum available to an arbitrator (unless restricted by agreement) . . . we conclude that the order did not exceed the arbitrator's powers simply because the same relief is not or might not be available in a judicial action."].) Given the scope of the terms of reference as well as of the arbitration provision itself, especially in light of the general

7

principle that an arbitrator is authorized to determine all questions necessary to resolve the controversy submitted to arbitration (*Greenspan v. LADT, LLC*, *supra*, 185 Cal.App.4th at p. 1438), Amkor's contention that the determination of posttermination royalties was beyond the scope of the panel's jurisdiction cannot be sustained.

Amkor argues next that even if the panel had jurisdiction to decide this issue, the panel exceeded its powers by making an award that is expressly forbidden by the license agreement. Amkor relies on section X.H of the license agreement which provides in relevant part, "Any termination of this agreement pursuant to this paragraph X . . . shall be deemed a termination of the agreement in accordance with its terms (including termination of any payments of royalties to Tessera and any rights of licensee to use any technology or Tessera patent licensed hereunder)."[2]

Contrary to Amkor's characterization, these provisions do not expressly forbid the panel from awarding posttermination royalties. Section X.H clearly contemplates that upon termination of the agreement Amkor will cease making use of Tessera's patents and therefore that Tessera will be entitled to no further royalties. The section does not specify what remedies will be available if Amkor wrongfully continues to make use of the patents after termination. "Arbitrators are not obliged to read contracts literally, and an award may not be vacated merely because the court is unable to find the relief granted was authorized by a specific term of the contract. [Citation.] The remedy awarded, however, must bear some rational relationship to the contract and the breach. The required link may be to the contractual terms as actually interpreted by the arbitrator (if the arbitrator has made that interpretation known), to an interpretation implied in the award itself, or to a plausible theory of the contract's general subject matter, framework or intent. [Citation.] The award must be related in a rational manner to the breach (as expressly or impliedly found by the arbitrator). Where the damage is difficult to

---

[2] Amkor also relies on section X.I.1 of the license agreement which provides in relevant part that "licensee's obligation to make payment to Tessera accrued under this agreement on or prior to expiration or termination" "shall survive the termination or expiration of this agreement."

determine or measure, the arbitrator enjoys correspondingly broader discretion to fashion a remedy." (*AMD*, *supra*, 9 Cal.4th at p. 381, fn. omitted.) As noted by the trial court, the panel's reasons "for granting a remedy through the date of judgment bore a rational relationship to the contract and the effects of Amkor's conduct under the contract." [3]

Finally, Amkor argues that the panel exceeded its authority by awarding a remedy that is not authorized by California law. Amkor relies on language in *Jordan, supra,* 100 Cal.App.4th at page 443 that a panel exceeds its authority when it "selects a remedy not authorized by law." However, the facts in *Jordan* bear no similarity to those in the present case, and the cases cited in *Jordan* in support of the broad proposition that arbitrators may not "select[] a remedy not authorized by law" demonstrate the inapplicability of this broad statement.

First, *Jordan* cited *Marsch v. Williams* (1994) 23 Cal.App.4th 238, in which the court held that the arbitrators exceeded their authority by appointing a receiver. The court in *Marsch v. Williams* emphasized "the importance of the trial court's role in supervising a receiver cannot be understated. 'The receiver is but the hand of the court, to aid it in preserving and managing the property involved in the suit for the benefit of those to whom it may ultimately be determined to belong.' [Citations.] '[A] receiver is an agent of the court, not of the parties, and the receivership estate consisting of property which is properly in his hands is under the control and continuous supervision of the court.' [Citation.] Given the continuing nature of a receiver's duties and the court's supervision, any addition to the type of tribunals empowered to appoint and supervise receivers would represent a fairly profound change in our receivership law." (*Id.* at p. 248.) The court concluded that "the power to appoint receivers is unique and cannot be extended to arbitrators in the absence of legislative action" even where the parties have agreed to the appointment of one. (*Id.* at pp. 246, 248.)

---

[3] For this reason, we similarly reject Amkor's argument that the panel exceeded its powers by rewriting the terms of the license agreement.

*Jordan* also cited *Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1349, in which the court held that the arbitrator exceeded its authority by imposing economic sanctions to enforce the award. The court reasoned that there was no statutory authority for arbitrators to enforce an award because sections 1285 and 1287.4 authorize a party to an arbitration "to petition the court to confirm an award which, if confirmed, results in the entry of judgment" and that "[o]nce entered the judgment 'has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action; . . . and it may be enforced like any other judgment of the court in which it is entered.' " (*Id.* at pp. 1348-1348.) The court explained, "The means through which a judgment may lawfully be enforced is a discrete subject involving many considerations. In enacting enforcement mechanisms, the Legislature must balance the due process rights of the judgment debtor against the right of the judgment creditor to receive the benefits of the judgment, resolving these conflicting positions so that the public's confidence and respect for the judicial system will be enhanced. [¶] . . . [¶] In light of . . . the Legislature's prodigious efforts in enacting a comprehensive statute dealing with the various methods to enforce judgments, the Legislature had no need to furnish an arbitrator additional authority for enforcement purposes postjudgment. Such authority would not only conflict with judicial power, but absent carefully prescribed procedures potentially interfere with the respective rights of the parties." (*Id.* at p. 1349.)

These cases make clear that an arbitrator exceeds its authority not when it makes an error of law in selecting a remedy under a particular legal theory, but when it selects a remedy that it does not have authority to impose under any circumstances. Here, Amkor's argument is simply that the arbitrators' remedy is inconsistent with California contract law. Amkor relies on *Susteen, Inc. v. Sourcenext Corp.* (9th Cir. 2008) 266 Fed.Appx. 690, 691, in which the court observed that "[u]nder California law . . . if a licensor elects to terminate a license agreement upon the licensee's breach, the obligation to pay future royalties ceases as well." It argues, "Having chosen to terminate the agreement, as a matter of California law, Tessera gave up any entitlement to receive further royalties under that agreement." There is no dispute, however, that an arbitrator has the authority

10

to award royalties for the improper use of patented technology. The court did not select a remedy not authorized by California law. Whether the court made an error of law in awarding royalties in this particular case is precisely the type of analysis prohibited under section 1286.6. (*AMD, supra,* 9 Cal.4th at p. 366; *Moncharsh v. Heily & Blasé, supra,* 3 Cal.4that p. 28.)

In short, the panel did not exceed its authority in issuing "Partial Award No. 3."[4]

## Disposition

The order denying Amkor's petition is affirmed. Tessera shall recover its costs on appeal.

_____
Pollak, Acting P. J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

---

[4] Because we need not address Tessera's judicial estoppel and waiver arguments, Amkor's requests for judicial notice filed January 23 and June 12, 2014 in support of its opposition to those arguments are denied. The exhibits to Amkor's requests shall remain sealed.