Filed 6/8/22  Jiang v. Ferreira CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ANNIE PING JIANG et al., | B302944 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC573979) |
| v. | |
| INIS FERREIRA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory W. Alarcon, Judge.  Affirmed.

Randall A. Spencer for Defendants and Appellants.

Law Offices of Eugene S. Alkana and Eugene S. Alkana for Plaintiffs and Respondents Annie Ping Jiang and New Home for Me, Inc.

Samuel and Samuel, Peter F. Samuel, and Carl R. Samuel for Defendant, Cross-defendant, and Respondent Bibi Mohammad.

# INTRODUCTION

Annie Jiang and her company, New Home for Me, Inc., filed this action against Inis Ferreira, also known as Tia Berg, Michael Judah, and others for rescission of an agreement to purchase an assisted living facility known as Wilshire Vista Manor and for damages. Jiang alleged that Berg and Judah misrepresented Wilshire Vista Manor's income and expenses and that Jiang would not have purchased the business had she known it was unprofitable. The trial court granted a motion to compel arbitration based on an arbitration provision in the purchase and sale agreement, and an arbitrator issued an award in favor of Jiang that rescinded the transaction and ordered Berg and Judah to pay Jiang damages and attorneys' fees. The trial court entered a judgment confirming the arbitration award.

Berg contends the trial court erred in confirming the arbitration award because the arbitrator (1) exceeded his powers by amending the arbitration award to allow Jiang to sell Wilshire Vista Manor if Berg and Judah failed to pay her the monetary award within 30 days and (2) erred in refusing to hear evidence in support of Berg's cross-claims as a penalty for not paying all of the arbitration fees. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Jiang Purchases Wilshire Vista Manor*

In 2014 Jiang decided to purchase an assisted living facility. Real estate agent Bibi Mohammad introduced Jiang to Judah, who owned Wilshire Vista Manor, a 40-bed assisted living facility in Los Angeles, and to Berg, Judah's girlfriend, who

2

managed the business. Judah had purchased Wilshire Vista Manor one year earlier for $40,000.[1] Although Berg represented that she owned Wilshire Vista Manor and told Mohammad that she and Judah were partners, Judah actually owned the business.[2] Berg told Jiang that Wilshire Vista Manor generated a monthly net profit of $40,000. Mohammad asked Berg for a profit and loss statement and a tax return, but Berg provided neither.

In July 2014 Jiang agreed to purchase the business from Judah for $1.5 million, to be paid by giving Judah title to a commercial building Jiang owned in San Gabriel that was worth $1 million, along with $150,000 cash and a $350,000 promissory note. Escrow closed on August 6, 2014.

After the close of escrow, Jiang discovered Berg had misrepresented Wilshire Vista Manor's income and expenses. Although Berg gave Jiang a document showing the business's average monthly gross income was approximately $72,000 and its monthly profit was approximately $40,000, after the transaction closed Jiang discovered other documents showing the average monthly gross income for the prior nine months was $60,000, which was $12,000 less than Berg represented. Jiang also discovered discrepancies in the list of residents and the amounts

---

[1] Judah testified he had paid $110,000 in cash, plus "high end women's clothing, including bikinis, dresses and skirts" worth $400,000, but the arbitrator found his testimony was not credible.

[2] Although she was not the owner of Wilshire Vista Manor, Berg signed documents on its behalf using several different names, including her grandmother's.

they paid Wilshire Vista Manor.  In addition, shortly after the close of escrow and unbeknownst to Jiang, Berg moved the highest-paying resident from Wilshire Vista Manor to a senior care facility Judah owned.

B.    *Jiang and New Home for Me File This Action for Rescission and Other Relief*

On February 27, 2015 Jiang and her company, New Home for Me, filed this action against Berg, Judah, and Judah's company, Doctors Best Hospice, alleging causes of action for rescission, cancellation of the purchase and sale agreement, and an injunction prohibiting the sale of the San Gabriel property. Berg, Judah, and Doctors Best Hospice filed a cross-complaint alleging Jiang fraudulently misrepresented the value of the San Gabriel property and made only one of the 36 payments required under the promissory note.[3]  On October 28, 2016 the trial court granted a motion to compel arbitration of the action and the cross-action based on arbitration provisions in the purchase and sale agreement.

C.    *The Arbitration Results in an Award for Jiang*

The arbitration took place over 11 days between April 2017 and November 2018.  By November 2018 Berg and Judah were

---

[3]    Jiang (in her complaint) and Berg, Judah, and Doctors Best Hospice (in their cross-complaint) also asserted claims against Mohammad and Christopher Ugochukwu Ajagu, the real estate agents involved in the transaction.  The claims against Ajagu were dismissed in June 2016.  The arbitrator later dismissed the claims against Mohammad and ordered Berg, Judah, and Doctors Best to pay Mohammad's attorneys' fees and costs.

4

four months behind in paying arbitration fees.  Jiang brought a motion under one of the arbitration rules of the dispute resolution provider organization to prevent Berg and Judah from introducing evidence in support of their claims for affirmative relief.  The rule stated:  "If a party has failed to deposit its pro-rata or agreed-upon share of the fees and expenses, that party will be precluded from offering evidence in support of any affirmative relief at the hearing."  The arbitrator granted the motion and precluded Berg and Judah from seeking affirmative relief on their cross-complaint.

The arbitrator issued an initial award on February 21, 2019 and an amended award on July 8, 2019.  The arbitrator found that Judah had purchased Wilshire Vista Manor for $40,000 in August 2013 and that "the $1,500,000 he sold Wilshire Vista for [to Jiang] represents an almost unheard of profit."  The arbitrator found Berg and Judah were not credible, characterizing their testimony as including "feigned forgetfulness," "mischaracterization of events," "outright denials of indisputable facts," and "misrepresentation[s]."  The arbitrator found Jiang "was a more credible witness than either Mr. Judah or Ms. Berg."  The arbitrator ruled "the material misrepresentations made to Annie Jiang, some of which were oral as the matter proceeded, entitle her to the rescission relief requested."  He further ruled Berg and Judah "failed to produce sufficient admissible evidence to support any award of affirmative relief."  The arbitrator observed that Jiang had been current on taxes and loan payments for the San Gabriel property, but that Judah had not paid property taxes or made loan payments, even though he was collecting rent from tenants.  The arbitrator, among other things, (1) ordered Judah to (re)convey

5

title to the San Gabriel property to Jiang, (2) ordered Jiang to (re)convey title to Wilshire Vista Manor to Judah, (3) awarded Jiang $438,407, which included amounts for tax liability and unpaid loan payments, and (4) awarded Jiang $206,071 in attorneys' fees and $56,575 in costs.

On July 24, 2019 counsel for Jiang wrote a letter to the arbitrator, with a copy to Berg, Judah, and their attorneys, asking the arbitrator to amend the award to add the following language: "In the event that [Berg, Judah, and Doctors Best Hospice] fail to pay to [Jiang and New Home for Me] the sum of $701,053.06 within 30 days after the Final Award is confirmed by the Superior Court, [Jiang and New Home for Me] are authorized to sell the business known as Wilshire Vista Manor and to apply the proceeds first to the amount awarded to [Jiang], up to $701,053.06." Counsel for Jiang asked the arbitrator to make the change "as soon as possible because there is a critical issue concerning unpaid property taxes. The property tax deficit is so substantial that there will be a tax sale at the end of October, 2019." One day later, the arbitrator issued a second amended award adding the language counsel for Jiang requested.

D.    *The Court Confirms the Arbitration Award and Enters Judgment*

Jiang filed a petition to confirm the arbitration award, and Berg filed a petition to vacate it. Berg asked the trial court to vacate the award because (1) the arbitrator improperly dismissed the cross-complaint and refused to consider evidence on affirmative relief for failure by Berg and Judah to pay arbitration fees, (2) the arbitrator exceeded his powers when he amended the award to allow Jiang to sell Wilshire Vista Manor if Berg and

6

Judah failed to pay her within 30 days after the trial court confirmed the award, and (3) Berg was not a party to the arbitration agreement.

On October 11, 2019 the trial court granted the motion to confirm the arbitration award and denied the motion to vacate it. The court ruled it "was within the arbitrator's discretion to exclude affirmative relief sought and is akin to a sanction" for "non-payment of fees for over four months." The court further ruled the "amended award only clarifies the prior award and does not add parties or impose future sanctions." Finally, the court denied Berg's request to dismiss her from the case because she participated in the arbitration. Berg timely appealed from the judgment confirming the arbitration award.[4]

---

[4]     Doctors Best Choice, Inc. also appealed from the judgment. It was a suspended corporation, but no longer. (See Rev. & Tax. Code, § 23301; *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1215 [because a formerly suspended corporation "is now a corporation in good standing, it may defend and participate in this action"]; *Cadle Company v. World Wide Hospitality Furniture* (2007) 144 Cal.App.4th 504, 512 ["The suspension statutes are not intended to be punitive. Once the statutory goals underlying suspension are met, no purpose is served by imposing additional penalties. [Citations.] Leniency permits a delinquent corporation to secure a revivor, even at the time of the hearing, at the request of the corporation or on the trial court's own motion."].) Therefore, the motion to dismiss its appeal is denied. We previously dismissed Judah's appeal.

# DISCUSSION

Berg argues the trial court erred in denying her motion to vacate the arbitration award for two reasons. First, she argues the arbitrator exceeded his powers under Code of Civil Procedure section 1286.2, subdivision (a)(4), by "making provisions in the award for its enforcement."[5] Second, she argues the arbitrator erred in refusing to hear evidence in support of her cross-claims as a penalty for not paying arbitration fees. Neither argument has merit.

A.    *Applicable Law and Standard of Review*

"California law favors alternative dispute resolution as a viable means of resolving legal conflicts. 'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.' [Citation.] Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916; see *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 868 (*Cohen*).) Judicial review of an arbitration award is limited to "circumstances involving serious problems with the award itself, or with the fairness of the arbitration process."

---

[5]    Statutory references are to the Code of Civil Procedure.

(*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 12; see *Heimlich v. Shivji* (2019) 7 Cal.5th 350, 367 (*Heimlich*).)

Under section 1286.2 a court must vacate an arbitration award if, among other circumstances, it determines that the "arbitrators exceeded their powers" or that the "rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy . . . ." (§ 1286.2, subd. (a)(4) & (5).) We review an order denying a petition to vacate an arbitration award de novo. (*Richey v. AutoNation, Inc.*, *supra*, 60 Cal.4th at p. 918, fn. 1; *Bacall v. Shumway* (2021) 61 Cal.App.5th 950, 957.) "'"In determining whether an arbitrator exceeded his [or her] powers, we review the trial court's decision de novo, but we must give substantial deference to the arbitrator's own assessment of his [or her] contractual authority."'" (*Cohen*, *supra*, 31 Cal.App.5th at p. 869.)

B.    *The Arbitrator Did Not Exceed His Powers in Authorizing Jiang To Sell Wilshire Vista Manor If Berg and Judah Did Not Pay the Monetary Award*

Berg contends the arbitrator exceeded his authority by amending the arbitration award to provide that, if Berg and Judah did not pay the approximately $701,000 monetary award within 30 days after the court confirmed the award, Jiang could sell Wilshire Vista Manor and apply the proceeds, up to $701,000, to satisfy the monetary award. Berg argues that this part of the award was an unauthorized remedy because the arbitrator "attempted to enforce a judgment" and that "the power to enforce

9

a judgment is specifically reserved for the trial court." The law does not support Berg's argument.

Unless "expressly restricted by the agreement or the submission to arbitration," arbitrators "have substantial discretion to determine the scope of their contractual authority to fashion remedies," and "judicial review of their awards must be correspondingly narrow and deferential." (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376 (*Advanced Micro Devices*).) A choice of remedy "may at times call on any decisionmaker's flexibility, creativity and sense of fairness. In private arbitrations, the parties have bargained for the relatively free exercise of those faculties. Arbitrators, unless specifically restricted by the agreement to following legal rules, '"may base their decision upon broad principles of justice and equity."'" (*Id.* at pp. 374-375; see *Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1139 ['"Were courts to reevaluate independently the merits of a particular remedy, the parties' contractual expectations . . . would be defeated."'].) The "remedy an arbitrator fashions does not exceed his or her powers if it bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly or impliedly, by the arbitrator." (*Advanced Micro Devices*, at p. 367; see *VVA-TWO, LLC v. Impact Development Group, LLC* (2020) 48 Cal.App.5th 985, 1003 ["in reviewing an arbitration award, a court may review only to assure the arbitrator's interpretation provides the basis for the remedy awarded," and in "'close cases the arbitrator's decision must stand'"].) Courts "'will uphold awards of specific performance by arbitrators in instances in which the equitable remedy would not have been available if the dispute

10

had originally been litigated in court'" because an "'arbitration panel may grant equitable relief that a Court could not.'" (*Advanced Micro Devices*, at p. 389; see *Kelly Sutherlin McLeod Architecture, Inc. v. Schneickert* (2011) 194 Cal.App.4th 519, 529-530 ["Although a California court arguably may not have the power to compel a party to retract defamatory statements, the parties may allow an arbitrator to do so."].)

Nothing in the contractual arbitration provisions or the rules governing the arbitration indicates the parties intended to restrict the arbitrator's power to fashion a remedy. (See *Advanced Micro Devices, supra*, 9 Cal.4th at p. 384; *Cohen, supra*, 31 Cal.App.5th at pp. 871-872.) The dispute resolution provider organization's arbitration rules provided: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties . . . ." The Supreme Court has described this rule as "'a broad grant of authority to fashion remedies' [citation], and as giving the arbitrator 'broad scope' in choice of relief." (*Advanced Micro Devices*, at pp. 383-384; see *Cohen*, at p. 871.)

The arbitrator ordered rescission of the transaction and made a monetary award. Both remedies were legally authorized. "Rescission is intended to restore the parties as nearly as possible to their former positions and "'to bring about substantial justice by adjusting the equities between the parties" despite the fact that "the status quo cannot be exactly reproduced.""' (*Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1144.) In addition, "'concurrent with the award of rescission, the trial court may award money damages or order such other relief as justice may require.'" (*Runyan v. Pacific Air Industries, Inc.* (1970) 2 Cal.3d 304, 316; see *Wong v. Stoler* (2015) 237 Cal.App.4th

11

1375, 1386 ["If the court finds that the contract was rescinded, "'[t]he aggrieved party shall be awarded *complete relief*, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled.""].)

The arbitrator's award was also rationally related to the goal of restoring the parties to their positions before the transaction, a goal that required the award to address the unpaid loan payments for, and delinquent property taxes on, the San Gabriel property. As the arbitrator stated: "As nearly as possible, this award attempts to put the parties into the positions they were in prior to entering into this purchase and sale agreement. In order to put claimant back to the position she was in prior to being defrauded. She had been current on the taxes on the San Gabriel property and on the loan payments for that property. Once the deal had gone through in 2014, [Berg and Judah] failed to make the loan payments even though they were collecting rent, and they failed to pay the property taxes since 2014." In his July 24, 2019 letter asking the arbitrator to amend the award, counsel for Jiang explained the tax issue was so "critical" and the deficiency so "substantial" that the property might be sold within a few months to pay the back taxes. The monetary award to Jiang was designed to compensate her for the overdue property taxes and loan payments she would have to pay, plus the money she had spent to keep the unprofitable Wilshire Vista Manor afloat. If Berg reconveyed the encumbered San Gabriel property to Jiang but failed to pay the monetary award, Jiang may not have been able to pay the past due property taxes and loan payments, and she may have lost the

12

property. Such a series of events would have prevented the arbitration award from restoring the pre-transaction status quo.

Berg provides no authority for her assertion the arbitration award was improper because it attempted to enforce a judgment. Berg cites *Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conf. Center Bd.* (1996) 41 Cal.App.4th 1551, 1555 for the proposition that arbitration awards "have been vacated on the basis of arbitrators exceeding their powers when arbitrators have . . . attempted to enforce a judgment which is specifically reserved for the trial court," but *Hall* did not involve an arbitrator attempting to enforce a judgment. In that case the trial court denied the motion to add a judgment debtor as an alter ego "on the ground that the court had no jurisdiction over any person or corporate entity other than" the judgment debtor. (*Id*. at p. 1554.) The court in *Hall* reversed, holding the trial court should have considered the merits of the motion to amend the judgment. The court stated that, because "'an arbitrator has no power to determine the rights and obligations of one who is not a party to the . . . arbitration proceedings,'" only "the superior court has jurisdiction to amend the award to add an alter ego." (*Id*. at p. 1555.) Not really relevant to the issue here.[6]

---

[6] Berg cites *Jordan-Lyon Productions, Ltd. v. Cineplex Odeon Corp.* (1994) 29 Cal.App.4th 1459 for the proposition that an arbitrator lacks authority to impose a judgment lien (which the arbitrator did not do here). What this court actually held in that case, however, was that a court cannot create an attachment lien in a pending arbitration because an arbitration is not an action or proceeding within the meaning of the statutes governing attachments. (*Id*. at pp. 1467-1468.)

13

Berg cites two cases, both decided before the Supreme Court's decision in *Advanced Micro Devices*, *supra*, 9 Cal.4th 362, where courts vacated arbitration awards because the arbitrators exceeded their authority in imposing remedies. Neither case helps Berg. In *Marsch v. Williams* (1994) 23 Cal.App.4th 238 the court held an arbitration panel exceeded its authority when it appointed a receiver without statutory authority. (*Id.* at p. 248.) The arbitrator did no such thing here.

In *Luster v. Collins* (1993) 15 Cal.App.4th 1338, which involved a dispute between neighbors over an easement, the arbitrator ordered the defendant to remove 24 trees and some "threatening signs" that were in the easement. (*Id.* at p. 1343.) The arbitrator also ordered the defendant to pay $50 per tree for each day the defendant failed to remove trees and $50 for each day he failed to remove the signs. (*Id.* at p. 1347.) The court held that the $50 daily award was a monetary sanction for future violations of the orders and that neither the California Arbitration Act nor the arbitration agreement gave the arbitrator authority to impose such monetary sanctions. (*Id.* at p. 1350.) The court in *Luster* stated that, because the plaintiff contended the defendant's failure to cut down the trees and signs caused him "to suffer a total of $3,500 in damages, there is no principled basis which will support a determination that the $1,200 per day award was intended to represent compensation for future losses." (*Id.* at p. 1348) But while the $50 daily sanction in *Luster* was an arbitrary, unprincipled amount that had no relation to the defendant's actual or potential loss, the arbitration award here was eminently principled: It allowed Jiang to sell Wilshire Vista Manor and keep the proceeds up to $701,000, the amount

14

required to avoid losing the San Gabriel property Jiang was receiving in rescission.

Berg contends the arbitrator acted improperly by failing to hear evidence of the value of the business, set a minimum sales price, and require Jiang to advertise the business for sale to "increase[ ] the probability that a maximum sales price for the business would be obtained." But Jiang had an incentive to sell Wilshire Vista Manor for as much as possible, at least up to $701,000, and Berg presented no credible evidence the business was worth more than $701,000. In fact, the evidence in the record suggests the value of Wilshire Vista Manor was considerably less than $701,000. Although Jiang paid $1.5 million for Wilshire Vista Manor in 2014, that was based on fraudulent information provided by Berg, and the arbitrator found Judah paid only $40,000 for Wilshire Vista Manor in 2013.[7]

Berg also contends the arbitrator did not have the authority to amend the award to include the provision allowing Jiang to sell Wilshire Vista Manor because he did so "within 24 hours of an extrajudicial communication without any notice, formal hearing, briefing, or opportunity for objection." But when counsel for Jiang sent his letter to the arbitrator asking him to

---

[7] Berg and Judah's expert witness testified "he values a business such as Wilshire Vista Manor on the number of beds it has, and uses $20,000 as a guide" (which would have valued the 40-bed facility at $800,000), but the arbitrator found that the witness's expertise was "questionable" and that his testimony was "unbelievable and unreliable," in part because of the witness's practice of "making his own objections and laughing during testimony."

amend the award to add the provision allowing Jiang to sell Wilshire Vista Manor if necessary, counsel sent copies of the letter to the arbitrator's case manager (in accordance with the arbitration rules) and to all parties. Counsel for Berg did not object to the request in the arbitration, either before or after the arbitrator issued the amended award. Berg may not have had enough time to object before the arbitrator amended the award, but she had plenty of time after to object or ask the arbitrator to amend the award again. (See *A.M. Classic Const., Inc. v. Tri-Build Development Co.* (1999) 70 Cal.App.4th 1470, 1476 [arbitrator did not exceed his authority in issuing an amended award in response to an ex parte communication from one side's lawyer about a cause of action the arbitrator had inadvertently failed to resolve].)[8]

---

[8] *Emerald Aero, LLC v. Kaplan*, *supra*, 9 Cal.App.5th 1125, cited by Berg, is distinguishable. In that case, the plaintiffs added a $30 million punitive damages claim by sending a copy of their arbitration brief by email the day before the arbitration hearing to the defendant, who was unrepresented, awaiting criminal sentencing, and did not appear at the arbitration hearing. (*Id*. at pp. 1141-1142.) The punitive damages claim was more than 30 times the initial arbitration claim, a fact not mentioned in the email or emphasized in the brief. (*Id*. at p. 1142.) The court in *Emerald Aero* concluded the notice did not satisfy the dispute resolution provider organization's arbitration notice rules or principles of fundamental fairness and reversed the judgment confirming the arbitration award. (*Id*. at p. 1141.) Here, the change in the award was relatively minor, and there is no dispute Berg received notice of the amended award and could have objected to it.

16

C.    *The Arbitrator Did Not Substantially Prejudice Berg's Rights by Precluding Her from Seeking Affirmative Relief*

Berg contends the trial court should have vacated the award under section 1286.2, subdivision (a)(5), because the arbitrator substantially prejudiced her rights by refusing to hear evidence of affirmative relief.  As discussed, the arbitrator precluded Berg and Judah from pursuing their cross-claims as a penalty for failing to pay arbitration fees.[9]

Section 1286.2, subdivision (a)(5), provides that the court must vacate an arbitration award where the "rights of the party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy."  This provision "was designed as a 'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.' [Citation.]  It comes into play, for example, when an arbitrator, without justification, permits only one side to present evidence on a disputed material issue." (*Heimlich*, *supra*, 7 Cal.5th at p. 368.)

The Supreme Court in *Heimlich* described the circumstances in *Royal Alliance Associates, Inc. v. Liebhaber* (2016) 2 Cal.App.5th 1092 as the "paradigmatic example of when a refusal to hear evidence will justify vacation of an award." (*Heimlich*, *supra*, 7 Cal.5th at p. 369.)  In *Royal Alliance* a

---

[9]    In her cross-complaint Berg sought $370,000 from Jiang for payments owed on the promissory note and $150,000 from real estate broker Mohammad for her commission.  Jiang argues Berg lacks standing to assert a claim on the promissory note because it was payable to Judah, not Berg, an issue we do not reach.

17

securities brokerage firm sought to expunge an allegation of misconduct from one of its employee's records. (*Royal Alliance*, at p. 1096.) The arbitration panel allowed the broker to testify, but denied the client's request to speak or cross-examine the broker. When one arbitrator suggested she would like to hear from the client, the presiding arbitrator responded, "'Well, how can we make sure we're not going to be here for another two hours? That's the problem.'" (*Id*. at p. 1099.) The court in *Royal Alliance* held the trial court properly vacated the arbitration award because the arbitrators gave the brokerage firm "an unfettered opportunity to bolster the written record but denied [the client] even a limited chance to do the same." (*Id*. at p. 1110.)

The arbitrator in this case heard extensive testimony from all parties, including Berg and Judah. It was not until the eleventh and last day of the arbitration hearing that the arbitrator ruled on Jiang's motion to preclude Berg and Judah "from putting on any evidence as to affirmative relief for nonpayment of arbitration fees." Berg and Judah were four months behind in paying arbitration fees, and the arbitrator granted the motion under the applicable rule of the dispute resolution provider organization's arbitration rules. When counsel for Berg asked for clarification of the ruling, the arbitrator stated, "Well, to the extent that they laid out their claims in the cross-complaint, that's where I'm making the decision. Seeking affirmative relief, they cannot do that now." The arbitrator had already heard 11 days of testimony, including from Berg and Judah, and his ruling only excluded evidence relating to their cross-claims, not evidence relating to Jiang's claims or their affirmative defenses.

18

Berg does not dispute the arbitration rules authorized the arbitrator to exclude her evidence in support of her affirmative cross-claims. Instead, she asserts the arbitrator imposed the sanction even though she was "one week behind payment on the latest invoice." The record shows, however, that when the arbitrator ruled on Jiang's motion in November 2018, Berg had not made a payment since July, while Jiang had made payments in August, September, and October. According to the arbitrator, the case manager "sent out several notices after July, please pay, please pay, and nothing happened."

Berg also argues it was not her fault she ran out of money to pay the arbitration fees. First, she contends the parties estimated the arbitration would last three days, but it actually took 11 days because "the arbitrator failed to exercise proper control over the proceedings" and "90% of the arbitration consisted of [Jiang's] case in chief."[10] Second, Berg complains the arbitrator identified a potential conflict on the first day of the arbitration hearing that required Judah and Berg to hire separate counsel at substantially greater expense.[11] Berg cites no

---

[10] The parties disagree on why the arbitration lasted 11 days. In his award, the arbitrator said Judah spent the second day of the hearing attempting to recant his entire testimony on the first day of the hearing. And although the arbitration rules required the parties to pay in advance for three hearing days, nothing in the record suggests the parties were promised the hearing was limited to three days.

[11] According to the declaration of Neal Salisian, counsel for Berg and Judah on the first day of the arbitration hearing, after Judah's testimony raised a possibility Salisian might have a

evidence the arbitrator's lack of control over the hearing or his identification of a potential conflict was error, much less a ground for vacating the award. (See *Cohen*, *supra*, 31 Cal.App.5th at p. 868 [courts "'cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties'"].)

It is not clear from the record whether the arbitrator made a finding Berg was able to afford the $5,482 she owed in arbitration fees.[12]  But if Berg was truly unable to pay, she could have sought relief from the trial court.  When "a party who has engaged in arbitration in good faith is unable to afford to continue in such a forum, that party may seek relief from the superior court.  If sufficient evidence is presented on these issues, and the court concludes the party's financial status is not a result of the party's intentional attempt to avoid arbitration, the court may issue an order specifying:  (1) the arbitration shall continue so long as the other party to the arbitration agrees to pay, or the arbitrator orders it to pay, all fees and costs of the arbitration;

conflict representing Judah and Berg, the arbitrator recessed the hearing and ordered Salisian to research the potential conflict. Salisian subsequently concluded Judah's testimony created an unwaivable conflict, which required him to withdraw from representing Judah or Berg.

[12]     Jiang asserts the arbitrator found Berg and Judah were able to pay because they were collecting approximately $5,000 in monthly rent from the San Gabriel property, but were not making loan payments or paying the property taxes.  The arbitration award, however, does not contain a finding on Berg's or Judah's ability to pay.

20

and (2) if neither of those occur, the arbitration shall be deemed 'had' and the case may proceed in the superior court." (*Weiler v. Marcus & Millichap Real Estate Investment Services, Inc.* (2018) 22 Cal.App.5th 970, 981; see *Aronow v. Superior Court of San Francisco County* (2022) 76 Cal.App.5th 865, 874; *Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 90.) Nothing in the record indicates Berg made any effort to present evidence to the arbitrator or the trial court that she could not afford the $5,482 she owed.[13]

---

[13] Berg also argues in passing that the arbitrator's refusal to consider evidence supporting her cross-claims was misconduct and that the award was procured by undue means. (See § 1286.2, subd. (a)(1) & (3) [a court shall vacate an award if the "rights of the party were substantially prejudiced by misconduct of a neutral arbitrator" or the award "was procured by corruption, fraud or other undue means"].) As discussed, these arguments are also meritless. (See *Comerica Bank v. Howsam* (2012) 208 Cal.App.4th 790, 827 [arbitration award was not procured by corruption, fraud, or other undue means where the arbitrator entered a party's default for failing to pay fees in advance; the arbitration rules allowed the arbitrator to "dismiss a claim or counterclaim, without prejudice, if a party fails to timely provide the full amount"].)

**DISPOSITION**

The judgment is affirmed.  The motion to dismiss the appeal by Doctors Best Choice, Inc. is denied.  Jiang, New Home for Me, and Mohammad are to recover their costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

WISE, J.*

---

*        Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.